JAMES E. THRELKELD, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9270-83.            Filed December 8, 1986.

*G. Keith Rogers, Jr.,* for the petitioner.
*Robert P. Crowther,* for the respondent.

GOFFE, *Judge*: The Commissioner determined deficiencies in petitioner's Federal income taxes for the taxable years 1979 and 1980 in the amounts of $3,225.37 and $18,838.18, respectively. After concessions by the parties, the sole issue for decision is whether the amount of $21,500 received in 1980 in settlement of a suit for malicious prosecution that represented recovery for injury to petitioner's professional

reputation is excludable from income under section 104(a)(2).[1]

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and accompanying exhibits are incorporated by this reference.

Petitioner filed a Federal income tax return for the taxable year 1980 with the Internal Revenue Service Center, Memphis, Tennessee. Petitioner was a resident of Memphis, Tennessee, at the time he filed his petition in this case.

In May 1975, J.B. Williams (Williams), a Texas resident, filed a lawsuit against petitioner and a codefendant in the Chancery Court of Shelby County, Tennessee, alleging fraud in connection with a real estate sales contract. Petitioner counterclaimed against Williams seeking specific performance of the contract. The court subsequently found for petitioner and his codefendant both upon Williams' claim for rescission and upon defendants' counterclaim for specific performance and awarded the defendants a judgment in the amount of $1,283,527.07. The judgment of the chancery court was upheld on appeal, and the Supreme Court of Tennessee denied an application for a writ of certiorari filed by Williams.

On May 10, 1979, petitioner filed suit in the U.S. District Court for the western district of Tennessee against Williams with jurisdiction being based upon diversity of citizenship. Petitioner alleged that Williams "instituted, continued, and prosecuted his claims" in the suit before the Chancery Court of Shelby County, Tennessee, "without probable cause and with malice." Petitioner also alleged that Williams' actions in bringing the suit for rescission in the chancery court caused petitioner various injuries described as follows:

Plaintiff was subjected to indignity, humiliation, inconvenience, and pain and distress of mind, was prevented from attending to his usual professional pursuits, incurred expenses and costs in defending Defen-

---

[1]All section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable years in question, and all Rule references are to the Tax Court Rules of Practice and Procedure.

dant's claims in and pertaining to the chancery suit, suffered injury to his professional reputation, and suffered injury to his credit reputation.

Petitioner's complaint included a prayer for compensatory damages in the amount of $250,000 and punitive damages in the amount of $1 million.

After instituting the suit for malicious prosecution against Williams in Federal court, petitioner filed two other lawsuits against Williams, his wife, Jean Proctor Williams, and others. These suits alleged that certain fraudulent conveyances of property were made in an attempt to insulate those properties from petitioner's judgment obtained in the original chancery court suit.

On December 8, 1980, petitioner and the Williamses entered into an agreement settling the suit for malicious prosecution. As part of the same agreement, petitioner agreed to release all other pending claims. Petitioner also agreed to assign the original chancery court judgment. As total consideration in settlement of his various claims, petitioner was to receive $300,000 allocated as follows:

(b) For the release by Threlkeld of his claims against J.B. Williams asserted in [the malicious prosecution action] for damage to Threlkeld's professional reputation, * * * $75,000.00.

(c) For the release by Threlkeld of his claims against J.B. Williams asserted in [the malicious prosecution action] for damage to Threlkeld's credit reputation, * * * $75,000.00.

(d) For the release by Threlkeld of his claims against J.B. Williams asserted in [the malicious prosecution action] for indignity, humiliation, inconvenience, and pain and distress of mind, * * * $74,980.00.

*    *    *    *    *    *    *

(f) For the assignment of the Judgment by Threlkeld * * * $75,000.00.

The settlement agreement also allocated $10 each as consideration for the release by petitioner of two suits alleging fraudulent conveyances by Williams that were intended to defeat the execution of the judgment for specific performance. No amount was characterized as payment for punitive damages.

In 1980, petitioner received $86,000 of the total settlement of $300,000, of which $21,500 represented a portion of the amount allocated to the damage to professional reputation. He received the remainder of the $300,000 settlement in 1981.

On his individual Federal income tax return for the taxable year 1980, petitioner reported $1,500 as long-term taxable gain from the portion of the settlement relating to the decree of specific performance. He did not report as taxable income for the taxable year 1980 any other portion of the $86,000 he received.

In his statutory notice of deficiency for the taxable years 1979 and 1980, the Commissioner determined deficiencies in petitioner's income tax of $3,225.37 and $18,838.18, respectively. The deficiency for the taxable year 1980 resulted, in part, by increasing petitioner's taxable income in the amount of $55,902 representing unreported income received as part of the settlement agreement. After concessions by the parties, the sole remaining issue is the excludability of the $21,500 received by petitioner in 1980 as payment for injury to his "professional reputation."

OPINION

We are called upon to decide whether an amount received that was specified as a recovery for injury to petitioner's professional reputation arising out of a claim of malicious prosecution is excludable from taxable income under section 104(a)(2).

Section 61 provides that, except as otherwise provided, gross income means "all income from whatever source derived." Section 104(a)(2) provides that "the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness" is excludable from gross income. The regulations promulgated under section 104(a)(2) provide that "damages received" means an amount received from an action based upon tort or tort-type rights. Sec. 1.104-1(c), Income Tax Regs. The law is well settled that the tax consequences of an award for damages depend upon the nature of the litigation and on the origin and character of the claims adjudicated, and not upon the validity of those claims. *Bent v. Commissioner*, 87 T.C. 236 (1986) ; *Glynn v. Commissioner*, 76 T.C. 116, 119 (1981), affd. without published opinion 676 F.2d 682 (1st Cir. 1982); *Seay v. Commissioner*, 58 T.C. 32, 37 (1972). No distinction is made between physical and nonphysical (mental or emotional) injuries. *Seay v. Commissioner, supra* at 40. However, in the

case of damages awarded in defamation suits, this Court has drawn a distinction between damages received for an injury to personal reputation and those received for injury to professional reputation. One of our recent opinions setting forth this distinction was reversed by the Court of Appeals for the Ninth Circuit. *Roemer v. Commissioner*, 716 F.2d 693 (9th Cir. 1983), revg. 79 T.C. 398 (1982). Based upon our careful consideration of the opinion of the Court of Appeals in *Roemer v. Commissioner, supra,* and after close scrutiny of all of our decisions in this area, we conclude that, for purposes of section 104(a)(2), there is no justification for continuing to draw a distinction, in tort actions, between damages received for injury to personal reputation and damages received for injury to professional reputation.

The factual setting of *Roemer v. Commissioner*, 79 T.C. 398 (1982), is fairly straightforward. The Court was confronted with the proper tax treatment of the proceeds of a jury award for compensatory and punitive damages arising from a libel suit filed in a California State court.[2] The libel suit was based upon the publication of a defamatory credit report that resulted in the loss of business opportunities. The allegations contained in his State court complaint and the evidence produced at trial both emphasized the injurious effect of the defamatory report on the taxpayer's business reputation and demonstrated that the report resulted in lost income and business opportunities. The taxpayer sought to exclude the damage award under section 104(a)(2) as an amount received on account for personal injuries.

In our opinion in *Roemer v. Commissioner, supra,* we addressed, as a threshold question, the necessity for drawing a distinction, for purposes of the exclusion of damages received on account of personal injuries under section 104(a)(2), between personal reputation and business or professional reputation. After deciding that just such a distinction was required, we concluded that the full amount of the compensatory damages received by the taxpayer was includable in his gross income. 79 T.C. at 407.

The Court of Appeals for the Ninth Circuit in the appeal of *Roemer* held that no distinction between injuries to personal and professional reputation was justified under

---

[2] The taxability of punitive damages is not an issue before us in the instant case.

section 104(a)(2). 716 F.2d at 697. Because the damages at issue were awarded pursuant to a defamation action, the court analyzed the nature of defamation under State law to decide whether the injuries which the taxpayer suffered were "personal."

After an exhaustive review of the history of defamation under California law, the court concluded that a defamation action involved distinctly personal injuries. The court characterized defamation as follows:

Although there are different types of defamation actions (libel or slander) depending on the form of the defamatory statements, all defamatory statements attack an individual's good name. This injury to the person should not be confused with the derivative consequences of the defamatory attack, i.e., the loss of reputation in the community and any resulting loss of income. The nonpersonal consequences of a personal injury, such as a loss of future income, are often the most persuasive means of proving the extent of the injury that was suffered. The personal nature of an injury should not be defined by its effect. [716 F.2d at 699; fn. ref. omitted.]

The Court of Appeals viewed the problem of recoveries for defamation from the proper perspective. Section 104(a)(2) excludes from income amounts received as damages on account of personal injuries. Therefore, whether the damages received are paid on account of "personal injuries" should be the beginning and the end of the inquiry. To determine whether the injury complained of is personal, we must look to the origin and character of the claim (*Glynn v. Commissioner, supra; Seay v. Commissioner*, 58 T.C. at 38), and not to the consequences that result from the injury. No doubt a defamatory statement that injures a person's professional reputation will result in lost income. In such cases, the amount of income lost is an accurate measure of the damage sustained because of the injury to reputation. However, the extent to which income is decreased, even though this may be the best measure of loss, in no way changes the nature of the claim. "It is simply not enough that the injury arose in connection with the taxpayer's business or his professional endeavor, or that the injury is somehow remotely capable of affecting his income." *Church v. Commissioner*, 80 T.C. 1104, 1109 (1983) (distinguishing *Roemer v. Commissioner*, 79 T.C. 398 (1982)).

The validity of the distinction between damages received for injuries to personal reputation and those received for injuries to professional reputation is further undermined by considering the disparate treatment given to damage awards received for physical injuries. The exclusion for damages received for personal injuries has long been extended to nonphysical, as well as physical, injuries by this Court and respondent. *Hawkins v. Commissioner*, 6 B.T.A. 1023 (1927); Sol. Op. 132, I-1 C.B. 92 (1922). If a taxpayer receives a damage award for a physical injury, which almost by definition is personal, the entire award is excluded from income even if all or a part of the recovery is determined with reference to the income lost because of the injury. Where, however, the damage award is received for a nonphysical injury, we have previously mounted an inquiry to determine whether the components of the injuries for which the award is made are personal or professional.

This inconsistency is graphically illustrated by considering the case of a young surgeon who loses a finger because of the tortious conduct of another. See *Roemer v. Commissioner*, 79 T.C. at 414 (Wilbur, *J.*, dissenting). This injury will surely cause the surgeon compensable general damages, such as physical and emotional pain and suffering, but it will also undoubtedly cause special damages including loss of future income. In order to prove the extent of the damages flowing from a clearly personal injury, the surgeon will likely produce evidence of both his actual pain and suffering and his loss of income. However, because it is easier to place a present dollar value upon the loss of future income than upon an intangible such as emotional pain, the surgeon will quite predictably place greater emphasis on lost income as a measure of his damages and will perhaps, thereby, receive a greater recovery. In such a case, the entire damage award or settlement amount received will be excluded from income. The fact that the tortious conduct causing the severed digit manifested itself in the loss of future income to the surgeon raises no troubling questions as to the exclusion of the award. Where, however, a taxpayer's injuries are nonphysical we have, in the past, ignored the personal nature of the claim and delved into an

inquiry regarding the nature of the consequences of the injury. See *Roemer v. Commissioner*, 716 F.2d at 700.

Not only does the distinction between damages for injury to personal reputation and those for professional reputation create an inconsistency between physical and nonphysical personal injuries that is analytically irreconcilable, the distinction also lacks a firm foundation in the case law of this Court.

The origin of the personal/professional reputation dichotomy has been attributed to a 1922 opinion of the Solicitor of Internal Revenue. Sol. Op. 132, I-1 C.B. 92 (1922). In that opinion, it was held that amounts received, whether by agreement of the parties or judgment of a court, on account of damages for defamation of personal character do not constitute income. I-1 C.B. at 93. However, the opinion did not extend to the taxability of damages received for defamation of business reputation or property rights. I-1 C.B. at 94. Nevertheless, in a 1958 ruling, the Commissioner cited the 1922 Solicitor's Opinion as authority for distinguishing between damages received for injury to personal reputation and those received for injury to professional reputation. Rev. Rul. 58-418, 1958-2 C.B. 18, 19.

This Court first considered the exclusion from gross income for damages received for personal injuries in *Hawkins v. Commissioner, supra.* In *Hawkins*, the taxpayer was removed from the office of president of a corporation by its directors. The taxpayer contemplated bringing suit against the corporation and some of its officers because of certain defamatory statements made by the officers. He alleged injury to his "reputation, business and health." Before a lawsuit was filed, however, the taxpayer settled his claims with the corporation. In deciding that the settlement award was not taxable, the Court held that the entire amount represented general damages for the personal injury caused by the defamatory statements. 6 B.T.A. at 1024. Although the defamation arose in the context of his employment, the Court stated that the settlement award "was compensation for injury to his personal reputation for integrity and fair dealing, including, as the record indicates, the injury to his health. * * * Here there is only the compensation which the law sanctions as the only remedy

which has thus far been devised for an injury which in its nature is wholly personal and nonpecuniary." 6 B.T.A. at 1024-1025. Quite notably, however, the Court in no way suggested that it must decide whether the settlement award represented compensation for an injury to the taxpayer's personal reputation or to his professional reputation.

We again confronted the taxability of payments received by a taxpayer in the context of his termination of employment in a Memorandum Opinion of this Court, *Agar v. Commissioner*, T.C. Memo. 1960-21, affd. 290 F.2d 283 (2d Cir. 1961). In *Agar v. Commissioner, supra*, the taxpayer submitted his resignation and then informed his former employers he intended to file a suit for damages based upon alleged mistreatment. Before any suit was filed, however, the corporation agreed to pay the taxpayer $45,000. The taxpayer argued before this Court that the amounts received from his former employer represented settlement of a proposed suit for injury to personal reputation and health. As such, he argued that those payments should be excludable from taxable income as compensation for a personal injury under our decision in *Hawkins v. Commissioner, supra*. The Court, however, found the payments not to be excludable on two grounds. First, the payments were not made in settlement of a claim of defamation, but rather constituted additional compensation to the taxpayer for his many years of service to the corporation. Second, the payments were more properly characterized as compensation for injuries done to the taxpayer's *business* reputation rather than his *personal* reputation.[3] The Court of Appeals for the Second Circuit affirmed our decision based upon the first rationale and the payments received were, therefore, taxable. 290 F.2d at 284. More importantly for our purposes

---

[3]As authority for treating amounts received as compensation for injury to personal reputation differently than amounts received for injury to professional reputation, we relied upon our decision in *Draper v. Commissioner*, 26 T.C. 201 (1956). In *Draper* and an earlier decision of this Court cited in *Draper*, *Kleinschmidt v. Commissioner*, 12 T.C. 921 (1949), we were confronted with the question of the deductibility of attorney's fees incurred by the taxpayer in a defamation suit. The question in these cases was whether the legal fees represented deductible trade or business expenses or nondeductible personal expenses. See secs. 162(a), 262; see also sec. 212. Regardless of the correctness of our decision in *Draper*, see *Wolfson v. Commissioner*, T.C. Memo. 1978-445, n. 10 (questioning whether *Draper* and *Kleinschmidt* are reconcilable), the inquiry required in that case is different than that required of us by sec. 104(a)(2) and provides little guidance regarding the meaning of "personal injury."

today, the Court of Appeals declined to rule upon our distinction between personal and professional reputation:

Since we affirm upon the first ground, we do not have to decide whether whatever tort claim Agar may have asserted was based upon damage to his personal as well as his business reputation, assuming that the dichotomy is realistic, and whether all payments or a portion of them would therefore be tax exempt. * * * [290 F.2d at 284.]

In later opinions, we held that a distinction must be drawn between recoveries for injuries to personal reputation and to professional reputation. *Glynn v. Commissioner*, 76 T.C. at 120; *Wolfson v. Commissioner*, T.C. Memo. 1978-445, affd. and remanded 651 F.2d 1228 (6th Cir. 1981); *Knuckles v. Commissioner*, T.C. Memo. 1964-33, affd. 349 F.2d 610 (10th Cir. 1965). However, in none of these opinions have we relied upon this distinction to decide the case. In *Glynn v. Commissioner, supra*, the Court denied an exclusion for amounts received by the taxpayer pursuant to an agreement upon the termination of his employment. Although the Court, in dictum, referred to the personal/professional reputation distinction, the basis for the denial of the deduction was that the gravamen of the settled claim was for recovery of accrued sick leave that would clearly be taxable income under section 61. 76 T.C. at 120-122.

Similarly, in *Knuckles v. Commissioner, supra*, another Memorandum Opinion of this Court, we held that payments received under an agreement with a former employer represented settlement of the taxpayer's claims under an employment contract. Although there was evidence of damage to the taxpayer's business reputation, the Court was unmoved by the taxpayer's tardy and self-serving claim that the amounts received were in settlement of a claim for personal injuries and, therefore, excludable.[4]

Later, in another Memorandum Opinion, *Wolfson v. Commissioner*, T.C. Memo. 1978-445, affd. and remanded 651 F.2d 1228 (6th Cir. 1981), we upheld the Commissioner's determination that the taxpayer must include in

---

[4]On appeal of the case, the Court of Appeals for the 10th Circuit affirmed this Court because the finding that the taxpayer's claim was not for personal injury was not clearly erroneous. *Knuckles v. Commissioner*, 349 F.2d 610, 613 (10th Cir. 1965). The Court of Appeals did not address the propriety of the personal/professional reputation dichotomy.

taxable income amounts received in settlement of a lawsuit against a medical school with which the taxpayer was associated as a teacher and researcher. Although we found that the amounts received represented compensation for injury to the taxpayer's professional reputation, we expressly refused to decide "whether there is a valid distinction between damage to one's personal reputation and damage to an employee's professional reputation for purposes of section 104(a)(2)." Our decision in *Wolfson v. Commissioner*, T.C. Memo. 1978-445, was affirmed by the Court of Appeals for the Sixth Circuit, which is the court to which the instant case is appealable. 651 F.2d 1228 (1981). In affirming *Wolfson*, the Court of Appeals found our determination to be not clearly erroneous while indicating inferentially that the result this Court reached was supportable because the payments received by the taxpayer represented the recovery of taxable earnings. The court did not endeavor to determine the validity of our distinction for damages received for injury to reputation in defamation suits.

As the foregoing demonstrates, with the exception of our decision in *Roemer v. Commissioner*, 79 T.C. 398 (1982), this Court has never relied, as the sole basis for deciding the case, upon the distinction drawn between damages received for injury to personal reputation and those for injury to professional reputation, divined from the 1922 Solicitor's Opinion. To be sure, some of our cases have indicated approval of this distinction. Nevertheless, no Court of Appeals has approved the distinction; one Court of Appeals, the Ninth Circuit, has determined the distinction to be invalid (*Roemer v. Commissioner*, 716 F.2d 693 (9th Cir. 1983)), and another, the Second Circuit, has questioned its validity (*Agar v. Commissioner*, 290 F.2d 283 (2d Cir. 1961)).

We do not lightly decline to follow one of our prior decisions; no court bound by the doctrine of stare decisis does. But where one of our decisions lacks a firm foundation in the case law and an appellate court issues a well-reasoned reversal of that decision, the weight of precedent must give way to a better approach. Therefore, we will no longer distinguish between personal reputation and professional

reputation for the purpose of deciding whether a damage award received in a tort action is excludable from gross income under section 104(a)(2).

Because we have concluded that the appropriate question for purposes of section 104(a)(2) is whether the damages were received on account of personal injuries, we must next decide what "personal injuries" are. The question is one of fact. *Seay v. Commissioner*, 58 T.C. at 37. The determination of whether damages are received on account of a personal injury properly depends on the nature of the claim. *Bent v. Commissioner, supra*; *Glynn v. Commissioner, supra*; *Seay v. Commissioner, supra*. Neither section 104(a)(2) nor its legislative history provides much guidance in this regard.[5] A personal injury has long been understood to include nonphysical as well as physical injuries. *Seay v. Commissioner, supra*; *Hawkins v. Commissioner*, 6 B.T.A. 1023 (1927); Sol. Op. 132, *supra*. Therefore, "personal" must be defined more broadly than "bodily" injury. The exclusion under section 104(a)(2) deals with damages received as a result of litigation or by an agreement in lieu of litigation. The regulations under section 104(a)(2) narrow the scope of damages received to those amounts received through prosecution of tort or tort-type rights. Therefore, "The essential element of an exclusion under section 104(a)(2) is that the income involved must derive from some sort of tort claim against the payor." *Glynn v. Commissioner*, 76 T.C. at 119. As a result, common law tort law concepts are helpful in deciding whether a taxpayer is being compensated for a "personal injury."

In *Roemer v. Commissioner*, 716 F.2d 693 (9th Cir.1983), the Court of Appeals relied solely upon the State law categorization of defamation as a personal injury to conclude that the compensatory portion of the judgment received by the taxpayer was excludable. Although we agree that the nature of the claim as defined under State law, and the concept of personal injury thereby embodied, are the

---

[5]Sec. 104(a)(2) remains substantially similar to its original predecessor, which was enacted as part of the Revenue Act of 1918, ch. 18, sec. 213(b)(6), 40 Stat. 1057, 1065-66 (1919). The legislative history of the Revenue Act of 1918 fails to define "personal injuries or sickness." H. Rept. 767, 65th Cong. 2d Sess. (1918), 1939-1 C.B. (Part 2) 86, 92. The legislative history of the Internal Revenue Code of 1954 also fails to define "personal injuries or sickness." H. Rept. 1337, 83d Cong. 2d Sess. 15 (1954); S. Rept. 1622, 83d Cong., 2d Sess. 15-16 (1954).

appropriate criteria in the case of a court judgement or settlement agreement in which damages are clearly allocated to an identifiable claim, reliance on State law, alone, cannot determine the availability of the exclusion under section 104(a)(2) in all situations.[6]

State law may be of limited assistance where, in a settlement, the claim settled is itself unclear. Similarly, State law is of little help where there are several claims, only some of which are for personal injuries. The State law classification of the various claims will be of no assistance identifying the claim or claims or in carving up the damage recovery. In such cases, we must look to various factors, including the allegations in the State court pleadings, the evidence adduced at trial, a written settlement agreement, and the intent of the payer. *Church v. Commissioner*, 80 T.C. 1104 (1983); *Fono v. Commissioner*, 79 T.C. 680, 696 (1982), affd. without published opinion 749 F.2d 37 (9th Cir. 1984); *Glynn v. Commissioner*, 76 T.C. at 120; *Wolfson v. Commissioner*, T.C. Memo. 1978-445, affd. and remanded 651 F.2d 1228 (6th Cir. 1981). In a given case, any one of these factors may be ultimately persuasive or ignored. See *Wolfson v. Commissioner*, T.C. Memo. 1978-445 (where the State trial court judge's opinion provides some evidence, but is not dispositive of the nature of damages); *Knuckles v. Commissioner*, T.C. Memo. 1964-33 (complaint alleging tort was motivated by desire for favorable tax treatment of amount received in settlement of employment contract claim). Because of the multitude of situations involving the payment of damages for an allegedly personal injury, the most that can be said is that we will look to all of the facts and circumstances to determine whether the injury is, in fact, personal. See *Seay v. Commissioner*, 58 T.C. at 37.

In the instant case we have before us a written settlement agreement specifically allocating $75,000 to injuries to

---

[6]It has often been stated that State law creates legal interests and rights, but Federal statutes determine when and how they shall be taxed. *Morgan v. Commissioner*, 309 U.S. 78, 80 (1940); *Burnet v. Harmel*, 287 U.S. 103, 110 (1932). However, Congress may indicate, either expressly or by implication, that the operation of a taxing statute depends upon State law classifications. *Jerome v. United States*, 318 U.S. 101, 104 (1942); *Poe v. Seaborn*, 282 U.S. 101, 110 (1930).

We find that the use of the terms "damages" and "personal injury" by Congress necessarily implies that the exclusion under sec. 104(a)(2) depends, to some degree, upon classifications under State law. This is confirmed by use of the term "tort or tort type rights" in the regulations under sec. 104(a)(2).

petitioner's professional reputation arising out of a claim of malicious prosecution. However, the specific allocation contained in the settlement agreement does not necessarily control in deciding whether the claim being settled arises from a personal injury. We, therefore, look to petitioner's allegations in his complaint in the State court. From the complaint, we find that petitioner alleged malicious prosecution arising out of the lawsuit filed by Williams to set aside a real estate contract on account of alleged fraud by petitioner.

Tennessee, the applicable jurisdiction in the diversity action filed by petitioner in the Federal District Court, recognizes a cause of action for malicious prosecution of a civil proceeding. *Ryerson v. American Surety Co. of New York*, 213 Tenn. 182, 373 S.W.2d 436, 437 (1963); *Priest v. Union Agency*, 174 Tenn. 304, 125 S.W.2d 142, 144 (1939). The elements of this tort "are that a prior suit or judicial proceeding has (1) been instituted and finally determined in favor of the plaintiff, (2) brought through malice on the defendant's part, and (3) without probable cause." *Kauffman v. A.H. Robins Co.*, 223 Tenn. 515, 448 S.W.2d 400, 402 (1969). See 4 Restatement, Torts 2d, sec. 674 (1977). Although for historical reasons, the action for malicious prosecution developed as a distinct tort, its similarity to an action for defamation is inescapable. W. Prosser, Law of Torts 834 (4th ed. 1971). Both actions allow for recovery for injury to reputation. 3 Restatement, Torts 2d, sec. 58(b) (1977), and accompanying comments.

Based upon our review of Tennessee law, we conclude that an action for malicious prosecution would be classified as an action for personal injuries. Tennessee law fixes at 1 year the applicable period of limitations for "personal tort actions" including "Actions for libel, for injuries to the person, false imprisonment, [and] malicious prosecution." Tenn. Code Ann. sec. 28-3-104 (1980). In interpreting the above statute, the Supreme Court of Tennessee held that the 1-year statute of limitations was intended to cover "actions brought for injuries resulting from invasions of rights that inhere in man as a rational being, that is, rights to which one is entitled by reason of being a person in the eyes of the law." *Brown v. Dunstan*, 219 Tenn. 291, 409

S.W.2d 365, 367 (1966) (quoting *Commerce Oil Refining Corp. v. Miner*, 98 R.I. 14, 199 A.2d 606 (1964)).

In conclusion, we emphasize that the question of interpretation presented by the language of section 104(a)(2) presents conceptual challenges. We also recognize that focusing upon the nature of the taxpayer's injury instead of the nature of the consequences flowing from that injury will often be difficult. However, this is no more difficult in most cases than the type of inquiry previously required by the line of cases, culminating in *Roemer*, which distinguished the nature of the consequences resulting from a claim. Furthermore, the approach that we will now apply in all cases, whether the injury claimed is personal, more accurately reflects the inquiry required by the plain meaning of the statute. Exclusion under section 104 will be appropriate if compensatory damages are received on account of any invasion of the rights that an individual is granted by virtue of being a person in the sight of the law.[7] Therefore, based upon all the facts and circumstances in this case, including the nature of an action for malicious prosecution under Tennessee law, we conclude that all of the compensatory damages received by petitioner in settlement of his claim for malicious prosecution, including those allocated by the settlement agreement as compensation for injuries to professional reputation, are excludable from gross income under section 104(a)(2).

*Decision will be entered under Rule 155.*

Reviewed by the Court.

STERRETT, CHABOT, NIMS, PARKER, WHITAKER, SHIELDS, HAMBLEN, COHEN, CLAPP, JACOBS, WRIGHT, PARR, WILLIAMS, and WELLS, *JJ.*, agree with the majority opinion.

KORNER, SWIFT, and GERBER, *JJ.*, did not participate in the consideration of this case.

---

[7]Although a corporation is treated as a "person" for many purposes, it is, nonetheless, a business entity and not a human being. We do not suggest that a corporation could avail itself of the exclusion granted by sec. 104(a)(2). See *Roemer v. Commissioner*, 716 F.2d at 699 n. 4.

SIMPSON, *J.*, dissenting: In my opinion, the Court has, by its decision today, eliminated the word "personal" from the description of the injuries for which damages are excludable under section 104(a)(2). Many cases involve difficult questions of distinguishing between personal and business injuries and the damages attributable to them. Often, in close cases, hard lines must be drawn, but because of the way the issue is presented in this case, we are not required to draw a fine line between a personal and a professional injury. Here, we are asked to decide whether damages which are admittedly for injury to a professional reputation are excludable as a personal injury.

In *Roemer v. Commissioner*, 79 T.C. 398 (1982), revd. 716 F.2d 693 (9th Cir. 1983), the taxpayer was defamed, and the defamation affected him personally and professionally. There can be reasonable differences of opinion over whether defamation is a personal injury and over whether the claim should be classified as one for personal injury in view of the consequences to both the personal and professional reputations. Yet, we are presented with no similar difficulties in this case.

Here, the petitioner was awarded substantial damages for his personal injury, and no doubt the parties have agreed that those damages are excludable under section 104(a)(2). He also was awarded damages for injury stated to be to his professional reputation. Thus, there is no question over whether these damages are attributable to a personal injury. If the words of section 104(a)(2) have any meaning, they surely do not permit the exclusion of damages declared to be for injury to a professional reputation.