T.C. Memo. 2000-59

UNITED STATES TAX COURT

WILLIAM A. AND ANN M. JACOBS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

JOHN W. AND PHYLLIS M. CONNELLY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 626-98, 627-98.       Filed February 23, 2000.

<u>Carol B. Bonebrake</u>, for petitioners.

<u>Robert J. Burbank</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Judge</u>:  These consolidated cases involve income tax deficiencies determined by respondent for petitioners' 1994 taxable year.  Respondent determined a $14,672 deficiency for petitioners William A. and Ann M. Jacobs, docket No. 626-98, and a $13,200 deficiency for petitioners John W. and Phyllis M.

Connelly, docket No. 627-98.  These cases were consolidated for trial, briefing, and opinion pursuant to Rule 141(a).[1]

The sole issue for our consideration is whether the portion of petitioners' judgment allocated as liquidated damages received in an action under the Fair Labor Standards Act of 1938, 29 U.S.C. secs. 201, 216(b) (1994) (FLSA), is excludable from gross income as damages received on account of personal injury or sickness under section 104(a)(2).

FINDINGS OF FACT[2]

At the time their respective petitions were filed, petitioners William A. and Ann M. Jacobs, husband and wife, resided in Silver Lake, Kansas, and petitioners John W. and Phyllis M. Connelly, husband and wife, resided in Wichita, Kansas.  Ann Jacobs and Phyllis Connelly are petitioners in this case solely because they joined in filing Federal income tax returns with their husbands.  Hereinafter, references to "petitioners" refer only to William Jacobs and John Connelly.

Petitioner Jacobs was employed by the Kansas State Highway Patrol from 1973 to 1997.  He worked as a road trooper, an aircraft pilot, and then held a position in the highway patrol

---

[1] Unless otherwise indicated, Rule references are to this Court's Rules of Practice and Procedure, and section references are to the Internal Revenue Code in effect for the taxable year in question.

[2] The stipulation of facts and the attached exhibits are incorporated herein by this reference.

headquarters.  Petitioner Connelly was employed by the Kansas State Highway Patrol from 1960 until 1993.  During his tenure, he was a field trooper, field sergeant, field lieutenant, and field captain.  He retired in February 1992 and was rehired the following day by the highway patrol as a motor-carrier inspection lieutenant until his termination in 1993.

Jacobs and Connelly joined in a suit entitled Kinnett v. State of Kansas, Case Nos. 90-4209-DES, 90-4214-DES, and 90-4215-DES, filed in the U.S. District Court for the District of Kansas in 1990 (Kinnett).  Kinnett involved claims under the FLSA for unpaid overtime compensation for employee-plaintiffs who had been classified as exempt from the requirements of the act.

The amended complaint alleged that the defendant had employed the plaintiffs on an hourly basis but required them to work in excess of the hourly levels specified in 29 U.S.C. section 207 and did not compensate the plaintiffs for their overtime hours.  Both Jacobs and Connelly had consistently worked in excess of 40 hours a week during their tenure.  The employee-plaintiffs' action challenged the exempt classification as improper because the employees did not meet the exemption test set forth in 29 C.F.R. section 541.118 (1991) and sought "unpaid overtime compensation, * * * liquidated damages, * * * attorney's fee * * * and costs" under

29 U.S.C. section 216(b).  A subsequent pretrial order contained further details of the parties' factual contentions and legal theories and bifurcated the action to arrange for separate trials on the liability and damage issues.  Neither the amended complaint nor the pretrial order made any reference to physical injuries or sickness claimed by any plaintiff.  The only claims made were based on the allegedly improper exemption and resulting loss of overtime pay.

No trial was ever held because the parties reached a settlement agreement and filed a Joint Motion for Judicial Approval of Settlement Terms and Dismissal of Action With Prejudice (joint motion), setting out the terms of the settlement.  With one exception, the plaintiffs settled their claims for 50 percent of the amounts claimed for unpaid overtime compensation and for an equal amount for liquidated damages. The joint motion provided that the defendant would provide the settlement amounts in exchange for liability releases signed by the plaintiffs.  The joint motion described the settlement agreement as entailing a "full and final settlement, release and waiver of any and all claims Plaintiffs have made or could have made arising out of any and all known and unknown economic losses or damages compensable under the FLSA".  The actual release stated:

> I * * * hereby release, acquit and forever discharge
> the State of Kansas * * * of and from any and all

actions, causes of action, claims, demands, declaratory judgment, damages, back wages, overtime compensation, expenses, compensation, attorneys fees, interest, liquidated damages, costs, and all consequential damage on account of or in any way arising out of any and all known and unknown economic losses or damages compensable under the Fair Labor Standards Act resulting from or which may result from my employment with the State of Kansas or any agency of the State of Kansas from January 1, 1987 through August 31, 1994.

On August 31, 1994, the U.S. District Court for the District of Kansas entered a Journal Entry of Dismissal With Prejudice and approved the settlement agreement. Plaintiffs received the settlement payments in two checks, one representing the unpaid overtime compensation and the other representing the liquidated damages portion of the settlement. The portion allocated to back wages had all applicable taxes and employee contributions withheld, and the portion allocated to liquidated damages was paid in full to the employees. The release provided that the liquidated damages portion of the settlement payment would be reported to the Internal Revenue Service on a Form 1099-MISC.

The total amount due to Jacobs by the State of Kansas was $96,134. The State issued him a W-2 in the amount of $48,067, withheld income and FICA taxes on that amount, and paid the balance of the $48,067 to Jacobs, which he then reported on his 1994 Federal income tax return as income. The State of Kansas also issued him a Form 1099-MISC in the amount of $48,067 and

paid him that amount, withholding nothing.  He disclosed receipt of those funds on his return but did not report that amount as income.

The total amount due to Connelly by the State of Kansas was $80,898.  The State issued him a Form W-2 in the amount of $40,449, withheld income and FICA taxes, and paid him the balance of the $40,449, which he then reported as income on his 1994 Federal income tax return.  The State also issued him a Form 1099-MISC in the amount of $40,449 and paid him that amount, withholding nothing.  He disclosed receipt of those funds on his return but did not report that amount as income.

Due to petitioners' exclusion of the liquidated damages settlement payments from income, the Commissioner issued deficiency notices to each.

Jacobs and Connelly each claim that the liquidated damages payments were excluded from income as compensation for personal injuries and/or sicknesses and that they had each suffered medical conditions while working for the Kansas Highway Patrol.

Jacobs began to have various physical problems in 1980, including failing eyesight, elevated blood pressure, and sexual dysfunction.  He also experienced mental anguish and stress because his job schedule and fatigue caused him to miss out on many family activities.  His physician put him on medication to reduce his blood pressure, which decreased somewhat while he

was working and more so after he quit his job with the highway patrol. He also noticed that his sexual dysfunction improved after retirement as well.

Connelly also experienced medical problems, such as loss of hearing, lower back problems, high blood pressure, and depression. He attributes his hearing loss to the State's failure to provide ear protection during firearms training and the back problems to the physical demands placed on an officer, such as sitting in a car for extended periods and helping people on the road by pushing cars out of the way or pulling people from cars. He believes that his depression resulted from the stresses of the job. Connelly never filed a workman's compensation claim for any of these injuries.

OPINION

Petitioners contend that the liquidated damages portions of their settlement payments were excludable from gross income pursuant to section 104(a)(2) as compensation paid "on account of personal injuries or sickness". Respondent counters that petitioners' liquidated damages payments do not qualify for the section 104(a)(2) income exclusion because they were not paid as compensation for personal injuries or sickness and/or because liquidated damages under FLSA are punitive. Section 104(a)(2) states that gross income shall not include "the amount of any damages received (whether by suit or agreement

and whether as lump sums or as periodic payments) on account of personal injuries or sickness". Section 104(a) further states that section 104(a)(2) "shall not apply to any punitive damages in connection with a case not involving physical injury or physical sickness."

We first consider whether the payments petitioners received as settlement for liquidated damages in the Kinnett litigation settlement are excludable from their 1994 taxable income pursuant to section 104(a)(2) as damages received on account of personal injuries or sickness.

Section 61 includes in gross income all income from whatever source derived. This section is broadly constructed, and any statutory exclusions from income must be narrowly construed. See Commissioner v. Schleier, 515 U.S. 323, 328 (1995). Section 104(a)(2) provides an exclusion for damages paid as compensation for personal injuries or sickness. If the damages are paid in settlement, the amount is excludable only if (1) it is received "on account of personal injuries or sickness", and (2) it is received for claims "based upon tort or tort type rights". See Commissioner v. Schleier, supra at 333.

Where damages are received pursuant to a settlement agreement, as here, the nature of the claim that was the basis for settlement controls whether such damages are excludable

under section 104(a)(2). See <u>United States v. Burke</u>, 504 U.S. 229, 237 (1992); <u>Thompson v. Commissioner</u>, 89 T.C. 632 (1987), affd. 866 F.2d 709 (4th Cir. 1989); <u>Threlkeld v. Commissioner</u>, 87 T.C. 1294 (1986), affd. 848 F.2d 81 (6th Cir. 1988). The determination of the nature of a claim is factual. See <u>Fabry v. Commissioner</u>, 111 T.C. 305 (1998). The crucial question is "in lieu of what was the settlement amount paid"? <u>Bagley v. Commissioner</u>, 105 T.C. 396, 406 (1995), affd. 121 F.3d 393 (8th Cir. 1997). We first look to the written terms of settlement agreements to determine the origin and allocation of settlement proceeds. See <u>Metzger v. Commissioner</u>, 88 T.C. 834 (1987), affd. without published opinion 845 F.2d 1013 (3d Cir. 1988). We may make that determination by reference to such agreement when it is entered into in an adversarial context, at arm's length, and in good faith. See <u>Knuckles v. Commissioner</u>, 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo. 1964-33.

To support their claim that the liquidated damages portion of the settlement was paid on account of personal injuries and/or sickness, petitioners direct our attention to the wording of the release and to petitioners' testimony about their understanding of the settlement agreement. Petitioners

interpret the wording of the release[3] so that the words "on account of or in any way arising out of any and all known and unknown economic losses or damages compensable under the Fair Labor Standards Act" modifies only "all consequential damage" rather than modifying the list of all types of relief preceding and including "all consequential damage".  By reading the release in this manner, petitioners claim that they gave up all possible "actions", "causes of action", "claims", "demands", not limited to economic losses or damages, against the State of Kansas when they signed that release.  In doing so, petitioners contend that they settled the claims for petitioners' medical conditions, thereby making the settlement proceeds paid on account of personal injury and/or sickness.  We reject this interpretation.

Petitioners' interpretation of the release language is untenable when considered in conjunction with the explanations

---

[3] The actual release stated:

I * * * hereby release, acquit and forever discharge the State of Kansas * * * of and from any and all actions, causes of action, claims, demands, declaratory judgment, damages, back wages, overtime compensation, expenses, compensation, attorneys fees, interest, liquidated damages, costs, and all consequential damage on account of or in any way arising out of any and all known and unknown economic losses or damages compensable under the Fair Labor Standards Act resulting from or which may result from my employment with the State of Kansas or any agency of the State of Kansas from January 1, 1987 through August 31, 1994. [Emphasis added.]

of the release in the settlement and the description of the cause of action in the pretrial order.  The language in the release does not indicate that the clause at issue modifies only the last type of relief in the list given.  If that had been the intention, the authors could have written it as petitioners rewrote it in their briefs, with numbers clearly delineating the types of relief and applying the modifying clause only to the last type of relief.  The pretrial order description of the settlement agreement also belies petitioners' interpretation.  The release is described as a release of "any and all claims Plaintiffs have made or could have made arising out of any and all known or unknown economic losses or damages compensable under the FLSA".  This language clearly excludes from the release any claims for noneconomic injuries or for any claims for losses or damages arising out of non-FLSA causes of action.

Petitioners testified that they understood the release to cover all claims against the State of Kansas, including any claims for the medical conditions they contend resulted from their employment with the State.  Although the belief of the payee is relevant to the inquiry, the character of the settlement payment hinges ultimately on the dominant reason of the payor in making that payment.  See Agar v. Commissioner, 290 F.2d 283, 284 (2d Cir. 1961), affg. T.C. Memo. 1960-21;

Fono v. Commissioner, 79 T.C. 680, 694 (1982), affd. without published opinion 749 F.2d 37 (9th Cir. 1984).  That intent is clearly expressed in the language of the release and pretrial order.  We do not need to look further.

We also find persuasive the lack of any reference to personal injuries in the amended complaint and/or pretrial order.  Petitioners never made a claim for or reference to personal injuries suffered on the job in either.  The complaint contained only a challenge to the exempt status of certain State employees and asserted those employees' rights to receive overtime compensation.  Though notice pleading is allowed by the Kansas Code of Civil Procedure, Rules Civ. Proc., Kan. Stat. Ann. sec. 60-208(e)(1) (1994), the short plain statement of the claim is sufficient only if it gives the defendant "fair notice of what the plaintiff's claim is and the ground upon which it rests." Rinsley v. Frydman, 559 P.2d 334, 338 (Kan. 1977) (citing Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Though it is not necessary to spell out a legal theory of relief in the pleadings, the opponent must be apprised of the facts that entitle the plaintiff to relief.  See Oller v. Kincheloe's, Inc., 681 P.2d 630, 637 (Kan. 1984).  Petitioners alleged no facts that provide even a hint of personal injury or illness.  Petitioners attempt to justify the lack of facts about injury or illness by claiming that the pretrial order had

bifurcated the damages and liability portions of the trial[4] and, therefore, claim no discovery on personal injuries was appropriate. This reasoning is unsatisfactory because it ignores the fact that the bifurcation happened more than 2 years after the amended complaint was filed without reference to injury or illness.

Moreover, the settlement terms make it unlikely that the liquidated damages payments were made to compensate specific personal injuries or sicknesses. All plaintiffs in Kinnett received a liquidated damages settlement amount equal to their back wages payment. The amounts paid were paid to each plaintiff in the action without reference to the severity or even existence of injury.

Finally, petitioners filed their cause of action under a Federal act that does not provide for personal injury compensation. The FLSA was enacted to establish minimum wages and maximum hours for employees. See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1945). According to 29 U.S.C. section 216(b) (1994), the only relief available under the FLSA for excessive hours worked is the payment of back wages and payment of liquidated damages, which are intended to compensate the employee for damages too obscure or difficult to estimate

---

[4] The pretrial order does not explain why the damage and liability portions of the trial were bifurcated.

caused by the delay of wage payment.  See <u>Overnight Motor Transp. Co. v. Missel</u>, 316 U.S. 572, 583-584 (1942).  While we do not question the existence or severity of petitioners' medical conditions, they have failed to demonstrate that any portion of the settlement was paid on account of those conditions.

With no mention of personal injuries in the amended complaint or pretrial order and given the unavailability of the type of relief claimed by petitioners under the cause of action they pursued, there has been no showing that the defendant settled the claim with an intention of compensating plaintiffs for personal injury or illness.

The income exclusion test, under section 104(a)(2), for personal injury or sickness compensation is two-prong.  Both prongs, settlement on account of personal injury or sickness and settlement of a tort or tortlike claim, are required. Because petitioners cannot show that any portion of the settlement was paid as compensation for personal injury or sickness, the income is not excludable under section 104(a)(2). Though there is some authority that a claim under FLSA may not sound in contract, thereby opening the possibility of a claim sounding in tort, it is unnecessary to consider that argument here because both prongs of the test must be met.

Seeking a more global holding regarding the nature of the liquidated damages under the FLSA, respondent makes an alternative argument that the liquidated damages are punitive and therefore not excludable under section 104(a)(2). Because we have already found that petitioners' liquidated damages payments were not compensation for personal injury or illness and therefore not excludable under section 104(a)(2), we need not decide whether liquidated damages under FLSA constitute punitive damages.

To the extent not herein discussed, we have considered all other arguments made by the parties and find them to be moot or without merit.

To reflect the foregoing,

<u>Decisions will be entered for</u>

<u>respondent.</u>