111 T.C. No. 17


UNITED STATES TAX COURT


CARL J. FABRY AND PATRICIA P. FABRY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9126-96.                    Filed December 16, 1998.

Ps sued the manufacturer of an agricultural chemical, claiming tortious injury to their nursery business.  The suit was settled and Ps received a payment, of which $500,000 was allocable to their claim of injury to their business reputation.  Ps argue that damages received on account of injury to business reputation are, as a matter of law, received on account of personal injuries within the meaning of sec. 104(a)(2), I.R.C.

<u>Held</u>:  Whether damages received on account of injury to business reputation are on account of personal injuries within the meaning of sec. 104(a)(2), I.R.C., is a question of fact.  <u>Held</u>, <u>further</u>, Ps have failed to prove that the $500,000 payment in question was received on account of personal injuries within the meaning of sec. 104(a)(2), I.R.C.

<u>Robert S. MacDonald</u> and <u>Brian J. Moran</u>, for petitioners.

Stephen R. Takeuchi, for respondent.


OPINION


HALPERN, Judge:

## I. Introduction

By notice of deficiency dated February 14, 1996, respondent determined a deficiency in petitioners' 1992 Federal income tax of $201,054 and an accuracy-related penalty of $40,211.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions, the sole issue for decision is whether $500,000 received by petitioners in settlement of a lawsuit alleging injury to business reputation is excludable from petitioners' gross income under section 104(a)(2) as damages received on account of personal injuries.[1]

---

[1] On their 1992 Federal income tax return, petitioners deducted legal fees incurred in connection with the recovery that is the subject of this case. By amendment to answer, respondent added a claim for a reduced deduction for legal fees if the Court were to conclude that any portion of the recovery was excludable from gross income. By the reply, petitioners denied the accuracy of respondent's method for determining the legal fees allocable to that recovery. At the conclusion of the trial, the parties stipulated that $100,000 is allocable to the recovery. Since we determine that no portion of the recovery is excludable from gross income, the issue raised by respondent's amendment to
(continued...)

Certain facts have been stipulated.  The stipulation of facts filed by the parties, with attached exhibits, is incorporated herein by this reference.  We have need to find few facts in addition to those stipulated and, accordingly, shall not separately set forth those findings.  We include our additional findings of fact in the discussion that follows.  Petitioners bear the burden of proof.  Rule 142(a).

II.  Background

A.  Residence

Petitioners resided in Orlando, Florida, at the time the petition was filed.

B.  Patsy's Nursery; Petitioners' Reputations

In 1976, petitioners started a business known as Patsy's Nursery, an unincorporated proprietorship located in Orange County, Florida.  In their nursery, petitioners grew Hoya Carnosa (Hoyas), ornamental plants commonly known as wax plants, and citrus trees.

Petitioner Patricia P. Fabry quickly developed a reputation for growing quality plants and, because of the high quality and vivid color of her Hoyas, became known as the "Hoya Lady".  Petitioner Carl J. Fabry also enjoyed a good reputation in the agricultural field.

---

[1](...continued)
answer is moot, and petitioners are entitled to deduct the legal fees in question.

C.  Benlate Damage

In connection with the operation of Patsy's Nursery, petitioners used a fungicide, Benlate, manufactured by E.I. du Pont de Nemours and Co. (du Pont).  From 1988 to 1991, petitioners suffered extensive damage to their stock of plants, which they claim was a result of their use of Benlate.

D.  The Lawsuit

In 1991, on account of the claimed Benlate damage, petitioners began a lawsuit against du Pont in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida (the lawsuit).  Petitioners averred that du Pont had allowed the Benlate used by petitioners to become contaminated so as to cause the damage in question.  Petitioners demanded a judgment for monetary damages from du Pont under theories of strict liability in tort and negligence.  Under both theories, petitioners claimed:  "[T]he Fabrys have sustained damages in the form of the lost value of destroyed or injured plants, damage to their business reputation, lost income and lost value for their business, the amount of which exceeds $10,000."  Du Pont answered the lawsuit, denying knowledge or information sufficient to form a belief as to the truth of many of petitioners' allegations and asserting affirmative defenses.

After mediation, the lawsuit was concluded pursuant to a stipulation of the parties, under which, among other things, du Pont agreed to pay to petitioners the sum of $3,800,000. Petitioners executed a general release and received the stipulated payment. Five hundred thousand dollars of the stipulated payment (the $500,000 payment) is allocable to business reputation damages.

### E.   Income Tax Return

In reporting the proceeds of the lawsuit in their 1992 Federal income tax return, petitioners excluded the $500,000 payment.

## III.  Discussion

### A.   Introduction

Petitioners brought the lawsuit against du Pont, claiming tortious injury to petitioners' nursery business as the result of their use of an agricultural chemical (Benlate) manufactured by du Pont. Petitioners received $3,800,000 from du Pont in settlement of the lawsuit, of which $500,000 is allocable to damages on account of petitioners' claim of injury to their business reputation (the $500,000 payment). We must decide

whether petitioners properly excluded the $500,000 payment from gross income.

Petitioners bear the burden of proof.  Rule 142(a).

B.  General Rules

Section 61(a) provides that, except as otherwise provided, "gross income" means "all income from whatever source derived". Sec. 61(a).  With an exception not here relevant, section 104(a)(2) provides that "the amount of any damages received (whether by suit or agreement * * * ) on account of personal injuries or sickness" is excludable from gross income.  The regulations promulgated under section 104(a)(2) provide:  "The term 'damages received (whether by suit or agreement)' means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution."  Sec. 1.104-1(c), Income Tax Regs.  To determine whether any payment received in settlement of a lawsuit is excludable under section 104(a)(2), we consider the nature of the claim that was the basis for the settlement, not the validity of the claim.  E.g., Metzger v. Commissioner, 88 T.C. 834, 847 (1987), affd. without published opinion 845 F.2d 1013 (1988). "If the settlement agreement lacks express language stating that the payment was (or was not) made on account of personal injury, then the most important fact in determining how section 104(a)(2)

is to be applied is 'the intent of the payor' as to the purpose in making the payment." Id. at 847-848 (citing Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo. 1964-33).

Neither the text nor the legislative history of section 104(a)(2) offers any explanation of the term "personal injuries".[2] Both the courts and the Commissioner long have recognized, however, that the section 104(a)(2) reference to "personal injuries" is not restricted to physical injuries but encompasses nonphysical injuries to the individual, as well, such as those affecting emotions, reputation, or character. See United States v. Burke, 504 U.S. 229, 235 n.6 (1992). For instance, we have on occasion found that damages received on account of damage to a taxpayer's business reputation were excludable damages received on account of personal injury. E.g., Threlkeld v. Commissioner, 87 T.C. 1294, 1308 (1986) (based on the nature of an action for malicious prosecution as an action for personal injuries under Tennessee law, settlement payment allocable to injury to professional reputation excludable from gross income under section 104(a)(2)), affd. 848 F.2d 81 (6th Cir. 1988). Nevertheless, as the Supreme Court recently made clear in Commissioner v. Schleier, 515 U.S. 323, 329-330 (1995),

---

[2] United States v. Burke, 504 U.S. 229, 234 (1992); see, e.g., H. Rept. 1337, 83d Cong., 2d Sess. 15 (1954); S. Rept. 1622, 83d Cong., 2d Sess. 15-16 (1954).

although it is a <u>necessary</u> condition of exclusion under section 104(a)(2) that the damages (or settlement amount) in question be received on account of the prosecution (or settlement) of a suit or action based on tort or tort type rights, that is not a <u>sufficient</u> condition for exclusion under section 104(a)(2).  The damages or settlement must be received <u>both</u> on account of a violation of tort or tort type rights <u>and</u> for personal injuries or sickness.  <u>Id.</u> at 330.  The parties here disagree as to whether the $500,000 payment was received on account of personal injuries.

C.  <u>Arguments of the Parties</u>

The arguments of the parties are straightforward. Respondent, while conceding that the $500,000 payment was received in settlement of a claim for tortious injury to business reputation, argues that it was not received on account of a personal injury.  Petitioners argue that injury to business reputation is, as a matter of law, a personal injury.

D.  <u>Discussion</u>

1.  <u>Nature of the Inquiry</u>

We do not agree with petitioners that injury to business reputation is, as a matter of law, a personal injury.  In <u>Threlkeld v. Commissioner</u>, <u>supra</u>, we decided not to follow our decision in <u>Roemer v. Commissioner</u>, 79 T.C. 398 (1982), revd. 716 F.2d 693 (9th Cir. 1983), in which we distinguished between

injury to personal reputation and injury to business reputation and held that damages awarded on account of defamation resulting in injury to business reputation did not give rise to damages received on account of personal injuries within the meaning of section 104(a)(2). We did not, in Threlkeld, adopt a per se rule that damages received on account of injury to an individual's business reputation are excludable under section 104(a)(2). We described the necessary determination as presenting a question of fact. Threlkeld v. Commissioner, supra at 1305. We said that the determination depended on the nature of the claim presented, and we looked to all the facts and circumstances of the case, including the State law characterization of the claim in question (a claim for malicious prosecution) to determine the nature of that claim. Id. at 1307-1308. We found that an action for malicious prosecution is similar to an action for defamation and concluded that it would be classified as an action for personal injuries under Tennessee law. Id. at 1307. We concluded that the payment received for the release of the taxpayer's claims against the defendant for damage to the taxpayer's professional reputation was excludable under section 104(a)(2).

Petitioners direct our attention to two recent memorandum opinions, Knevelbaard v. Commissioner, T.C. Memo. 1997-330, and Noel v. Commissioner, T.C. Memo. 1997-113, for the proposition that "business reputation damages arising in tort actions are

excludable under [section 104(a)(2)]". Petitioners state: "No special causation analysis was utilized in the Noel and Knevelbaard decisions nor was one necessary." In the Noel case, the taxpayer had sued PepsiCo, Inc. (PepsiCo), claiming both breach of contract and tortious interference with contractual rights and prospective business advantages. The case was settled, and the taxpayer received an undifferentiated amount in settlement of all of his claims. We found that PepsiCo's actions had caused the taxpayer to suffer emotional distress and had resulted in damage to the taxpayer's business reputation. We also found that the settlement payment was intended to settle both the taxpayer's contract claims and the tort claims. We divided the settlement amount between those two categories and held that the amount allocable to the tort claims was excludable under section 104(a)(2). A fair reading of our report is that we included as a tort claim the claim for damage to the taxpayer's business reputation (the business reputation claim). We did not state how much (if any) of the tort claim recovery was allocable to the business reputation claim, but it is a fair reading of our report that some of it was. We did not discuss at length our reasons for concluding that the unstated allocation to the business reputation claim was on account of personal injuries within the meaning of section 104(a)(2). We did find, however, that, during settlement negotiations, the taxpayer had discussed

with a representative of PepsiCo damages suffered by him, including harm to his business reputation through adverse publicity in the press.  In Noel, we did not hold that, in all events, damages received on account of injury to professional reputation that results from a tortious act are damages received on account of personal injuries within the meaning of section 104(a)(2).  Knevelbaard also involved a payment received in settlement of a lawsuit.  The Commissioner argued that the payment was in settlement of contract claims, while the taxpayers argued that it was for emotional distress.  We agreed with the taxpayers, stating only in passing that harm to reputation is a traditional harm associated with personal injury.  Knevelbaard also does not establish the rule of law that petitioners advocate.

We must consider all of the facts and circumstances to determine whether the $500,000 payment was received on account of personal injuries, as that term is used in section 104(a)(2).

### 2.  Facts and Circumstances

The lawsuit was concluded on March 23, 1992, when petitioners filed their notice of voluntary dismissal with prejudice in the court in which the lawsuit was commenced (the dismissal notice).  Contemporaneously, petitioners and du Pont executed the "General Release of All Claims" (the release).  The release recites the consideration to be received by petitioners.

It recites that it pertains to the use of certain products during the cultivation of "Hoya, Carnosa, Citrus Liners and Citrus Trees During the Years 1988 - 1991".  It contains language releasing du Pont and certain others from all claims relating to the use of the products in question.  It contains certain exclusions relating to (1) crops cultivated after the date of the release and (2) land on which the products were used.  The release contains no allocation of the consideration to be received by petitioners to any cause of action or injury.  Previously, on March 13, 1992, petitioners and du Pont had executed a document entitled "Stipulation of the Parties" (the stipulation), which recites the essential terms of the release but contains certain other terms.  Among the terms of the stipulation is the following:  "Excepted from the release shall be:  a. Soil contamination, b. Personal injury, c. Customer claims."

The release lacks specific language from which we can conclude that the $500,000 payment was received on account of personal injuries.  Although the release purports to be a general release and contains language releasing du Pont from certain undisclosed or potential claims, that is not sufficient evidence on its own that any of the amount paid in consideration of the release is on account of personal injuries within the meaning of section 104(a)(2).  See Scheele v. Commissioner, T.C. Memo. 1997-426; Galligan v. Commissioner, T.C. Memo. 1993-605.  We may,

however, consider extrinsic evidence.  <u>Threlkeld v. Commissioner</u>, 87 T.C. at 1306; <u>Church v. Commissioner</u>, 80 T.C. 1104, 1107 (1983); <u>Fono v. Commissioner</u>, 79 T.C. 680, 696 (1982), affd. without published opinion 749 F.2d 37 (9th Cir. 1984).  We must determine the nature of petitioners' claims and the intent of the payor (du Pont) in making the $500,000 payment.  We look to petitioners' First Amended Complaint for Damages and Demand for Jury Trial (the complaint) to determine the nature of their claim.  The complaint asks for damages and avers essential facts.  Petitioners claim that the Benlate they purchased was defective and proved detrimental to their nursery products.  They claim that, as the direct and proximate result of their use of the defective Benlate, among other things, they suffered damage to their business reputation.  They base their claims for damages against du Pont on theories of strict liability in tort and negligence.  Nowhere in the complaint, however, do petitioners use the term "personal injuries" to describe the injuries claimed to have been suffered as the result of their use of Benlate.

Petitioners have not argued to us (nor do we believe) that <u>all</u> injuries attributed to a defendant under a theory of strict liability in tort or caused by a defendant's negligence necessarily are personal injuries within the meaning of section 104(a)(2).  Moreover, as we said <u>supra</u> in section III.D.1., damage to business reputation is not, per se, a personal injury

within the meaning of section 104(a)(2).  None of the other injuries alleged in the complaint is a personal injury:  plant damage, lost profits, or loss of going-concern value. Petitioners do not claim that the cause of injury, defective manufacture of an agricultural chemical, necessarily results in a personal injury within the meaning of section 104(a)(2). Petitioners did not particularize their claim of injury to business reputation, so we might work backwards to a claim of defamation or some other "dignatory" or nonphysical (but personal) tort.  The plant damage averred by petitioners no doubt injured their business and, consequentially, their business reputation.  Nowhere in the complaint, however, is there any claim of personal injuries as the term is used in section 104(a)(2).

In addition to examining the release and the complaint, we have considered the mediation that preceded settlement, as well as the settlement negotiations between du Pont and petitioners. We have found no evidence of a claim for personal injuries within the meaning of section 104(a)(2).  As part of the mediation, petitioners filed a statement with the mediators (the statement). The statement recites petitioners' injuries in much the same terms as the complaint (i.e., a discussion of plant damage and the destruction of the nursery business).  None of petitioners' expert reports accompanying the statement, including the expert

report as to damages, describes injuries other than to various aspects of their business.  In the letters of petitioners' attorney that summarized the mediation, there is only one mention of personal injury:  his assertion that the personal injury exception to the stipulation of the parties applied only to physical personal injury.  That assertion postdates the release and fails to explain the absence of a similar exception in the release.  However, even if we were to assume that the release contained such an exception, that would not establish that any claim for personal injuries was made by petitioners.  It only would establish that no claim for "personal injury" (whatever that term was intended to mean) was settled.  There is still no evidence that a claim for personal injury was made during the lawsuit.[3]  Our examination of the mediation and settlement negotiations reinforces our belief that a claim for personal injuries was not raised in the suit and not addressed by du Pont in the settlement negotiations (except as noted with respect to the personal injury exception).

---

[3]    The only place that we noted where petitioners asserted a claim that may be a personal injury is in a letter to a private claims adjuster hired by du Pont before commencement of the lawsuit, in which they described their loss of friends who were also customers and their belief that they appeared as "lying, deceiving fools to our customers".  That claim never was made within the context of the lawsuit, and petitioners have failed to convince us that, when the release was executed, du Pont had in mind any claim that had been made for personal injuries within the meaning of sec. 104(a)(2).

Since the record of the lawsuit that is before us does not include any claim for personal injuries within the meaning of section 104(a)(2), we do not believe that the claim for injury to business reputation was on account of personal injuries, as that term is used in section 104(a)(2). Indeed, the stipulation on its face excepts personal injury from its coverage.

### 3. Conclusion

The $500,000 payment is allocable to business reputation damages. Nevertheless, petitioners have failed to prove that the $500,000 payment was received on account of "personal injuries", as that term is used in section 104(a)(2).

## IV. Conclusion

Petitioners have shown no grounds to exclude the $500,000 payment from gross income. Respondent's determination of a deficiency is sustained to the extent attributable to petitioners' omission of the $500,000 payment from gross income.

Decision will be entered under Rule 155.