T.C. Memo. 2000-98


UNITED STATES TAX COURT



MARSHA M. BLAND, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 24846-97.                    Filed March 22, 2000.



        In connection with a corporate reorganization and
consequent termination of her employment, P
participated in an enhanced severance program offered
to eligible employees.  Under this program, P received
a lump-sum payment, calculated based upon rate of pay
and years of service, in return for signing a general
release of all claims against her employer.  An
identical payment formula was applied and release
document signed in the case of each participating
employee.  P excluded this payment from income, and R
determined a deficiency for taxes attributable thereto.
P contends that the payment was received in settlement
of and to compensate for emotional distress she
suffered as a result of sexual harassment in the
workplace and, therefore, is excluded from income
pursuant to sec. 104(a)(2), I.R.C.

        Held:  The payment received by P is not excludable
from income under sec. 104(a)(2), I.R.C., as damages
received on account of personal injuries or sickness.

Kevin Burke and Leonard Leighton, for petitioner.

Elizabeth A. Owen, for respondent.


MEMORANDUM OPINION


NIMS, Judge: Respondent determined a Federal income tax deficiency for petitioner's 1994 taxable year in the amount of $13,816. Respondent also determined an accuracy-related penalty of $2,765 for 1994, pursuant to section 6662(a). After concessions, the sole issue for decision is whether a $58,845 payment received by petitioner from her employer, in connection with the termination of her employment, is excluded from income under section 104(a)(2).

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

This case was submitted fully stipulated pursuant to Rule 122. The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference.

## Background

Marsha M. Bland resided in Las Vegas, Nevada, at the time of filing her petition in this case. Prior to and during the year

in issue, petitioner resided in Oklahoma and, from July 17, 1970, to August 1, 1994, was employed by Public Service Company of Oklahoma (PSC).

In late 1986 or early 1987, petitioner was transferred within the PSC organization from an administrative position to a field personnel position. She alleges that shortly thereafter she began to experience instances of sexual discrimination and harassment. Petitioner characterizes her work environment as tainted by inappropriate and unprofessional negative comments, by offensive and harassing jokes, by disruptive behavior on the part of male workers and supervisors (throwing plastic cups at petitioner during a lecture she was attempting to present), and by greater restrictions on her ability to "call out" additional workers when needed for a job. We note, however, that because this testimony was presented only in the form of a written stipulation as to what petitioner would say if called as a witness, the Court was deprived of any opportunity to assess credibility. We therefore summarize petitioner's averments without making a determination regarding their veracity but for purposes of showing her position.

Prior to 1994, petitioner made complaints to PSC's Equal Employment Opportunity Consultant and Director of Human Resources regarding incidents of harassment by her male coworkers. She

also sent a letter to her supervisor, in response to an unfavorable performance review, which included the following language:

> Your memo asks for action plans on meeting your expectations, I don't feel this is possible.  Whatever your reasons are, as you have stated your [sic] not sure a woman could ever do this job as well as a man.
> * * *  This entire process has been an ongoing harrassment [sic] without constructive consequences.  I want to know what alternatives if any are open to me.  I feel that for the past twenty years that [I] have done a good job wherever I have worked.  I like my job I have now, but do not feel this continued and unjustified intimidation can or should be tolerated.
> * * *

Petitioner further asserts that she told the Equal Employment Opportunity Consultant that she was going to bring a lawsuit against the company, but she did not at any time file suit against PSC on the basis of gender discrimination or other claims.

Petitioner additionally suffered physical problems during the period she was employed as a field supervisor.  She was hospitalized three times, for chest pain, pneumonia, and abdominal pain, respectively, and she experienced continuing difficulty with breathing and asthma.  Petitioner attributes these ailments to work-related stress and maintains that the problems ceased after she left PSC.

In 1994, as part of a corporate reorganization in which unnecessary positions were eliminated, eligible PSC employees were offered an opportunity to participate in an Enhanced

Severance Plan.  Employees electing to so participate received a lump-sum payment representing 2-1/2 weeks of pay per year of service, in exchange for signing the Enhanced Severance Plan Full Waiver and Release of Claims.  Employees choosing not to sign the waiver received an Involuntary Termination Benefit.

Petitioner, as an eligible employee, signed the Enhanced Severance Plan Full Waiver and Release of Claims on June 16, 1994.  The terms of this waiver are set forth in relevant part below:

Enhanced Severance Plan
Full Waiver and Release of Claims

In exchange for the benefits of the Central and South West Corporation's Enhanced Severance Plan, I hereby waive and release any and all claims that I may have against Central and South West Corporation, Public Service Company of Oklahoma, Central Power & Light Company, West Texas Utilities Company, Southwestern Electric Power Company, Transok, Inc., CSW Energy, Inc., and CSW Development I, or any of their respective officers, owners, directors, employees, agents, insurers, subsidiaries, and assigns (hereinafter collectively referred to as the "Company") in any way arising out of the termination of my employment with the Company.  This Release includes, without limitation, any claim arising under the Age Discrimination in Employment Act of 1967, the Civil Rights Acts of 1964 and 1991, the Labor Management Relations Act, the Americans with Disabilities Act, any applicable state civil rights act, any other federal or state statute or local ordinance, or any common law cause of action including, without limitation, claims for breach of contract, wrongful discharge, personal injury or any claim for attorneys' fees.

I agree not to bring any lawsuit or proceeding against the Company for any matter in any way arising out of the termination of my employment.  I understand that this Release precludes me from recovering any relief as

a result of any charge, lawsuit, or proceeding brought by me or on my behalf in any way arising out of the termination of my employment.

No negotiations preceded petitioner's signing of the release, and she thereafter received a payment of $58,947 from PSC. This amount reflected 2-1/2 weeks of petitioner's pay times her years of service, for a gross sum of $63,097, less taxes withheld. PSC reported the payment as Form W-2, Wage and Tax Statement, income. On her 1994 Federal income tax return, petitioner excluded $58,845 from gross income, with the discrepancy presumably resulting from a computational error. Because respondent's subsequent notice of deficiency was based upon the $58,845 figure, the parties are referring to and treating the payment as a $58,845 payment, and we do likewise for purposes of our discussion.

## Discussion

We must decide whether the $58,845 received by petitioner in conjunction with her termination from PSC is excluded from income as compensation for injuries or sickness pursuant to section 104.

## I.  General Rules

As a general rule, the Internal Revenue Code imposes a Federal tax on the taxable income of every individual. See sec. 1. Section 61(a) specifies that "Except as otherwise provided", gross income for purposes of calculating such taxable income means "all income from whatever source derived". Compensation

for services, which by regulation includes severance or termination pay, is expressly encompassed within this broad definition.  See sec. 61(a)(1); sec. 1.61-2(a)(1), Income Tax Regs.

Section 104, in contrast, provides otherwise with respect to compensation for injuries or sickness and, in pertinent part, reads as follows:

SEC. 104.  COMPENSATION FOR INJURIES OR SICKNESS.

(a) In General.--Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include--

\* \* \* \* \* \* \*

(2) the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness;

(Section 104(a)(2) was amended by section 1605(a) of the Small Business Job Protection Act of 1996, Pub. L. 104-188, 110 Stat. 1755, 1838, generally effective for tax years beginning after December 31, 1996.)

Regulations promulgated under section 104 further define "damages received (whether by suit or agreement)" as "an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution."  Sec. 1.104-1(c), Income Tax Regs.

For purposes of applying the above statutory and regulatory text, the U.S. Supreme Court in Commissioner v. Schleier, 515 U.S. 323, 336-337 (1995), established a two-pronged test for ascertaining a taxpayer's eligibility for the section 104(a)(2) exclusion. As stated by the Supreme Court: "First, the taxpayer must demonstrate that the underlying cause of action giving rise to the recovery is 'based upon tort or tort type rights'; and second, the taxpayer must show that the damages were received 'on account of personal injuries or sickness.'" Id. at 337.

II. Contentions of the Parties

Petitioner contends that the payment she received from PSC satisfies both prerequisites for excludability under section 104(a)(2). According to petitioner, at the time of her termination she possessed a claim against PSC under Oklahoma law for the tort of intentional infliction of emotional distress, thereby meeting the requirement of an underlying claim based on tort or tort type rights. Petitioner then maintains that because PSC was aware of her complaints when the severance plan was offered and executed, PSC intended by that vehicle to settle her personal injury claims. Hence, in petitioner's view, the subject funds were received on account of her personal injuries. Petitioner further argues that, since her only complaint against

PSC was a tort claim for personal injuries, the full amount of the payment is attributable to settlement of that claim, and no allocation is necessary.

Conversely, respondent asserts that the $58,845 received by petitioner was paid neither in settlement of a tort type claim nor on account of personal injuries. Respondent avers that because the release by its terms waives only claims arising out of petitioner's termination, and because her tort claims arise out of incidents of alleged harassment during the course of her employment, such claims did not underlie the severance agreement. Respondent additionally contends that the lack of negotiations, the use of a general release, and the calculation of payment based on salary and years of service establish that PSC did not intend the $58,845 to compensate petitioner for specific personal injuries. Lastly, it is respondent's position that even if some part of the payment were intended to settle petitioner's personal injury claims, all proceeds are nonetheless taxable due to the absence of any basis for allocation between damages for personal injuries and other, nonexcludable, damages.

We conclude, for the reasons explained below, that petitioner has failed to establish her entitlement to the exclusion treatment afforded by section 104(a)(2). The $58,845 payment she received from PSC is therefore subject to taxation under the general rule of section 61(a).

III.  Application

    A.  Tort or Tort Type Rights

    As indicated above, the first requirement for the section 104(a)(2) exclusion is that the claim underlying the funds received must be based on tort or tort type rights.  See Commissioner v. Schleier, supra at 337.  A tort is defined as a "'civil wrong, other than breach of contract, for which the court will provide a remedy in the form of an action for damages.'" United States v. Burke, 504 U.S. 229, 234 (1992) (quoting Keeton et al., Prosser and Keeton on the Law of Torts 2 (1984)).  Where amounts are received pursuant to a settlement agreement, the nature of the claim that was the actual basis for the settlement controls excludability.  See Fabry v. Commissioner, 111 T.C. 305, 308 (1998); Stocks v. Commissioner, 98 T.C. 1, 10 (1992); Metzger v. Commissioner, 88 T.C. 834, 847 (1987), affd. without published opinion 845 F.2d 1013 (3d Cir. 1988).

    State law typically determines the nature of the legal interests involved.  See Massot v. Commissioner, T.C. Memo. 2000-24.  The claim must be bona fide, but it need not be sustainable or valid.  See Fabry v. Commissioner, supra at 308; Stocks v. Commissioner, supra at 10; Metzger v. Commissioner, supra at 847. The claim additionally need not have been asserted prior to the settlement, but lack of knowledge of the claim on the part of the

payor may indicate a lack of intent to settle such a claim. See Gajda v. Commissioner, T.C. Memo. 1997-345, affd. 158 F.3d 802 (5th Cir. 1998); Brennan v. Commissioner, T.C. Memo. 1997-317.

Here, intentional infliction of emotional distress, which petitioner contends she suffered while employed by PSC, is recognized as a tort under Oklahoma law. See Eddy v. Brown, 715 P.2d 74, 76 (Okla. 1986) (adopting the description of intentional infliction of emotional distress set forth in Restatement, Torts 2d, sec. 46 (1977)). This Court has likewise acknowledged infliction of emotional distress as a tortlike claim for purposes of section 104(a)(2). See Massot v. Commissioner, supra; Gajda v. Commissioner, supra; Brennan v. Commissioner, supra. We thus are willing to assume for purposes of this litigation that petitioner possessed a bona fide tort claim against PSC for emotional distress experienced as a result of gender discrimination. Therefore, in so assuming that petitioner had a tort claim which could have provided the basis for a settlement, we turn to the question of whether the payment she received was actually made to settle such claim, to compensate petitioner for personal injuries suffered as a result of the alleged tort.

B. On Account of Personal Injuries

As used in section 104(a)(2), personal injury encompasses harms both tangible and intangible, both physical and nonphysical. See Commissioner v. Schleier, 515 U.S. at 329 n.4;

United States v. Burke, supra at 235 n.6; Fabry v. Commissioner, supra at 309.  The Supreme Court has also noted specifically with regard to discrimination that "the intangible harms of discrimination can constitute personal injury, and * * * compensation for such harms may be excludable under § 104(a)(2)." Commissioner v. Schleier, supra at 332 n.6.  Intangible harms recognized as within the scope of the statute include those affecting emotions, reputation, or character.  See United States v. Burke, supra at 235 n.6; Fabry v. Commissioner, supra at 309. Hence, as a threshold matter, we acknowledge that petitioner's alleged injuries are personal in nature.

However, because exclusion under section 104(a)(2) depends not only on the nature of the injuries but also on the purpose of the payment, "the critical question is, in lieu of what was the settlement amount paid."  Bagley v. Commissioner, 105 T.C. 396, 406 (1995), affd. 121 F.3d 393 (8th Cir. 1997).  In the words of this Court:  "If the settlement agreement lacks express language stating that the payment was (or was not) made on account of personal injury, then the most important fact in determining how section 104(a)(2) is to be applied is 'the intent of the payor' as to the purpose in making the payment."  Metzger v.

Commissioner, supra at 847-848 (quoting Knuckles v. Commissioner, 349 F.2d 610 (10th Cir. 1965), affg. T.C. Memo. 1964-33); see also Fabry v. Commissioner, supra at 308.

Determining the intent of the payor is a factual inquiry, and the terms of the agreement as well as the setting in which it was reached and carried out are relevant in this endeavor. See Stocks v. Commissioner, supra at 11; Metzger v. Commissioner, supra at 848-850; Sherman v. Commissioner, T.C. Memo. 1999-202; Brennan v. Commissioner, supra. Here, both indicate that PSC did not pay $58,845 to petitioner on account of personal injuries and in settlement of her purported tort claim.

As regards the agreement itself, the waiver and release document signed by petitioner explicitly covers "any and all claims". It then sets forth a nonexclusive enumeration of claims within its reach which includes both tort and nontort causes of action. The terms of the release thus indicate that the intent of PSC was to settle all possible claims, not exclusively to compensate petitioner for emotional distress. The fact that the document is a standard, general release with no specific mention of petitioner's individual harms is also supportive of such a view.

Furthermore, as noted by respondent, the release expressly waives only claims "arising out of the termination" of employment, thereby providing some basis for an argument that PSC

did not intend to settle claims arising out of the course of employment, such as emotional distress experienced while working. However, since petitioner's termination can potentially be viewed as a culmination or outgrowth of the purported discrimination and consequent negative performance reviews, we decline to base our resolution of this matter on a restrictive interpretation of the above-quoted phrase.

The designation of the program under which the release was signed as the "Enhanced Severance Plan" is likewise indicative of intent.  The inference from this choice of terminology is that PSC management viewed as severance pay that which was received by petitioner in exchange for signing the waiver.  Severance pay, in turn, has been defined by this Court as "an allowance usually based on length of service that is payable to an employee on termination of employment."  Webb v. Commissioner, T.C. Memo. 1996-50.  The fact that petitioner's payment was calculated using a formula of 2-1/2 weeks of pay per year of service is thus consistent with and further evidences an intent to remit severance pay, rather than to compensate for personal injuries.

With respect to setting, the surrounding circumstances in this case also tend to weigh against characterizing petitioner's payment as compensation for personal injuries and in favor of seeing the funds as severance pay.  The parties engaged in no meetings or negotiations concerning petitioner's participation in

the Enhanced Severance Plan. Petitioner was likewise afforded no individualized treatment in terms of either the agreement signed or the payment received. Other employees who chose to participate in the Enhanced Severance Plan signed identical releases and received payments computed under the same mathematical formula. Petitioner's award reflects no increase in amount that could reveal an intent to recompense injuries that she alone suffered. Furthermore, although petitioner argues that her full payment was intended to settle her personal injury claim, we find that the implications of such a position render it insupportable. We cannot conclude that PSC gave other terminated employees severance pay but refused such a benefit to petitioner, and that she succeeded in getting anything at all only because of her harassment complaints.

A final indicator of PSC's intent in making the payment is the company's own characterization of the sum. PSC reported as Form W-2 income and withheld taxes from the $63,097 gross amount paid to petitioner under the Enhanced Severance Plan. PSC also labeled the $63,097 figure as "SEV PAY" on the company's December 17, 1994, Payroll and Deduction Register.

Given these facts, we find petitioner's situation analogous to previous cases involving lump-sum payments offered upon termination in return for signing a general release, and we conclude that a like result denying exclusion treatment is

warranted.  See <u>Sherman v. Commissioner</u>, <u>supra</u>; <u>Brennan v. Commissioner</u>, T.C. Memo. 1997-317.  Petitioner acknowledges on brief that "this Court has several times held that payments received under mass termination programs are not excluded under sections [sic] 104(a)(2)."  She maintains, however, that her circumstances are distinguishable.

Petitioner correctly observes that in a number of the mass termination and general release cases, the employee had never asserted, and the employer was not aware of, any work-related personal injury claims.  See, e.g., <u>Gajda v. Commissioner</u>, T.C. Memo. 1997-345; <u>Lubart v. Commissioner</u>, T.C. Memo. 1997-343, affd. 154 F.3d 539 (5th Cir. 1998); <u>Sodoma v. Commissioner</u>, T.C. Memo. 1996-275, affd. without published opinion 139 F.3d 899 (5th Cir. 1998); <u>Webb v. Commissioner</u>, <u>supra</u>.  She then avers that PSC's knowledge of her existing claim, through her previous complaints, differentiates her situation and shows that PSC intended the general release to settle such claim.  Case law, however, is contrary to any argument that employer awareness is sufficient to transmute a payment that otherwise bears all trappings of severance pay into compensation for personal injuries.

Two recent decisions regarding payments received pursuant to a downsizing by International Business Machines Corporation (IBM) illustrate this point.  In <u>Brennan v. Commissioner</u>, <u>supra</u>, the

taxpayer signed a general release of "all claims" and received a payment based on years of service and rate of pay.  IBM reported the payment as Form W-2 income, but the taxpayer argued that the sum should be excluded from income under section 104(a)(2).  See id.  He contended that he had a bona fide claim for intentional infliction of emotional distress caused by his travel schedule and pressures at work.  See id.  He emphasized that prior to executing the release he had both filed internal grievances regarding his complaints and been hospitalized for a nervous breakdown.  See id.  He then asserted that, in light of these previous grievances, IBM accepted his participation in the severance program in lieu of litigating his claims.  See id.

We assumed in Brennan v. Commissioner, supra, that the taxpayer had established an underlying tort type cause of action but found the following facts to indicate that the lump-sum payment was more akin to severance pay than to personal injury compensation:  The terms of the release covered both contract and tort liability; the release form was a standard document used by IBM for all employees who participated in the program; and the amount of the payment was calculated on the number of years of service and the taxpayer's salary.  Lastly, the Court noted that because the taxpayer had not come forward with any evidence of a

specific amount allocable to personal injury tort damages, rather than severance pay, the entire payment was presumed taxable. See id.

In Sherman v. Commissioner, T.C. Memo. 1999-202, the taxpayer initially refused to participate in IBM's severance program and threatened to enjoin the downsizing terminations on the basis of age discrimination. He had also previously filed unfair labor practice charges and internal complaints against supervisors. See id. He alleged that his treatment by IBM had resulted in physical and mental injury. See id. Through negotiations, he and IBM reached a settlement which involved a payment in excess of what would have been received under the severance program and a general release of "all claims". Id. A nonexclusive, "including but not limited to", enumeration followed "all claims" and reflected, among other things, the particular complaints made by the taxpayer. Id.

Faced with the above-described facts, the Court, while acknowledging that "It is apparent to us that IBM viewed petitioner as litigious", nonetheless concluded "IBM did not intend for any portion of the $207,000 to be specifically carved out as a settlement of a tort or tort type claim on account of a personal injury or sickness." Id. In reaching this conclusion, the Court again gave primary emphasis to the all-encompassing nature of the release:

> The agreement's broad language indicates that IBM considered the $207,000 payment as a quid pro quo for petitioner's release of all potential claims against IBM, including, but not limited to, tort claims. IBM did not make an identifiable portion of the payment in settlement of petitioner's personal injury claim. The payment was for severance pay as well as for petitioner's release of potential tort and nontort claims against IBM. [Id.]

As in Brennan v. Commissioner, supra, the Court held the entire payment taxable because no basis for allocating some portion solely to personal injury damages was proven by the taxpayer or reflected by the record. See id.

Given these authorities and the evidence before us, we see no grounds upon which to distinguish petitioner's circumstances. As explained above, we cannot accept petitioner's argument that the full amount of her payment was intended to compensate for personal injuries, and we are satisfied that it is in the main properly characterized as taxable severance pay. Therefore, since the record is devoid of any information that would support allocation of a specific sum to personal injury damages, the entire payment is taxable. See Pipitone v. United States, 180 F.3d 859, 865 (7th Cir. 1999); Taggi v. United States, 35 F.3d 93, 96 (2d Cir. 1994); Sherman v. Commissioner, supra; Brennan v. Commissioner, supra.

We hold that the $58,845 received by petitioner is not excluded from income under section 104(a)(2), and petitioner is liable for taxes thereon.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.