T.C. Memo. 2001-86

UNITED STATES TAX COURT

FRED HENRY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26254-96.                    Filed April 9, 2001.

<u>Robert G. Gargiulo</u>, for petitioner.

<u>Stephen R. Takeuchi</u>, for respondent.


SUPPLEMENTAL MEMORANDUM OPINION

CHIECHI, <u>Judge</u>:  This case is before us on remand from the
Court of Appeals for the Eleventh Circuit in <u>Henry v. Commis-</u>
<u>sioner</u>, 234 F.3d 34 (11th Cir. 2000), vacating and remanding
without published opinion T.C. Memo. 1999-205.  The Court of
Appeals remanded this case for further consideration in light of
<u>Fabry v. Commissioner</u>, 223 F.3d 1261 (11th Cir. 2000), revg. 111

T.C. 305 (1998).  In remanding this case for that purpose, the Court of Appeals stated:  "We imply no view as to the result that should be reached on remand."[1]

The findings of fact are set forth in Henry v. Commissioner, T.C. Memo. 1999-205 (Henry I), and are incorporated herein by this reference.[2]

Fabry v. Commissioner

In Fabry v. Commissioner, 111 T.C. 305 (1998) (Fabry I), the taxpayers (the Fabrys) operated a nursery in which they grew ornamental plants, and they developed a reputation for growing quality plants.  See id. at 306.  In connection with the operation of their nursery, the Fabrys used Benlate, a fungicide, on the plants that they grew and suffered extensive damage to those plants, which they claimed was the result of their use of Benlate.  See id. at 307.  The Fabrys sued du Pont, the manufac-

---

[1]By order of the Court, the parties filed opening and answering briefs on remand in which they set forth their respective positions on the result that we should reach on remand.  In petitioner's opening brief on remand, petitioner proposes certain findings of fact.  Each of the findings of fact proposed in petitioner's opening brief on remand was proposed as a finding of fact in the opening brief that petitioner filed after the trial in this case (petitioner's posttrial brief).  In finding the facts on the basis of the record in this case that are set forth in Henry v. Commissioner, T.C. Memo. 1999-205, the Court carefully considered each of the findings of fact proposed in petitioner's posttrial brief, including those findings of fact that are also proposed in petitioner's opening brief on remand.  On that record, we decline to find any additional facts.

[2]The stipulations of fact and exhibits attached thereto are also incorporated herein by this reference.

turer of Benlate, in the Court of the Ninth Judicial Circuit in and for Orange County, Florida.  In that suit, the Fabrys alleged that du Pont had allowed Benlate to become contaminated so as to cause the damages that they suffered from having used it on their stock of plants.  The Fabrys demanded a judgment for monetary damages from du Pont under theories of negligence and strict liability in tort.  Under both theories, the Fabrys claimed that they sustained damages in the form of the lost value of destroyed or injured plants, damage to their business reputation, lost income, and the lost value of their business.  After mediation, the suit which the Fabrys instituted against du Pont was concluded pursuant to a stipulation under which du Pont agreed to pay them $3,800,000.  See id.

The Commissioner of Internal Revenue (Commissioner) conceded in Fabry I that $500,000 of the $3,800,000 that du Pont paid to the Fabrys constituted damages for injury to their business reputation.  See id.  Thus, there was no dispute between the parties in Fabry I, as there was in Henry I, that a specified amount of the total damages paid was paid as damages for injury to business reputation.  The only question presented to us in Fabry I was whether, as argued by the Fabrys, the $500,000 that du Pont paid to them as such damages was received on account of personal injuries, as that term is used in section 104(a)(2).  See id. at 308.

In advancing their position in Fabry I, the Fabrys maintained that injury to business reputation is, as a matter of law, a personal injury within the meaning of section 104(a)(2). See id. at 309. We rejected that argument. See id. at 310-311. Having rejected the Fabrys' argument that injury to business reputation is, as a matter of law, a personal injury within the meaning of section 104(a)(2), we examined the facts and circumstances surrounding the $500,000 payment at issue in that case in order to determine whether that payment was made on account of personal injuries, as that term is used in section 104(a)(2). See id. at 311-314. Based on our examination of all the facts and circumstances surrounding that $500,000 payment, we concluded in Fabry I:

> Since the record of the lawsuit that is before us does not include any claim for personal injuries within the meaning of section 104(a)(2), we do not believe that the claim for injury to business reputation was on account of personal injuries, as that term is used in section 104(a)(2). * * *

Id. at 314.

The Court of Appeals reversed our decision in Fabry I in Fabry v. Commissioner, 223 F.3d 1261 (11th Cir. 2000) (Fabry II). After reviewing certain case law under section 104(a)(2), the Court of Appeals turned to this Court's opinion in Fabry I. The Court of Appeals acknowledged in Fabry II that "The IRS stipulated at trial that the $500,000 payment was properly allocable

as damage to the Fabry's business reputation",[3] id. at 1268-1269, and that the case presented a single question of law, i.e., whether the $500,000 of damages that du Pont paid to the Fabrys for injury to their business reputation was a payment received on account of personal injuries within the meaning of section 104(a)(2), see id. The Court of Appeals found our facts and circumstances approach to that question in Fabry I to be insufficient. See id. at 1269. The Court of Appeals stated: "Its [the Tax Court's] method of merely perusing the record, looking for the presence of the magic words, 'personal injury,' either in the complaint, the release, mediation correspondence or settlement documents is incorrect." Id.

In deciding Fabry II, the Court of Appeals examined intangible injuries such as injury to business reputation in light of

---

[3]In this regard, the Court of Appeals noted:

>     At trial, the IRS stipulated that: (1) du Pont was aware from the beginning that the Fabrys' claim included a claim for damage to their business reputation; (2) that throughout settlement discussions the Fabrys had steadfastly presented a $500,000 claim for damage to their business reputation; (3) that du Pont never disputed the Fabrys' claim for business reputation damage throughout the mediation; (4) that du Pont sought and obtained a release specifically with respect to the business reputation claim; and (5) that du Pont would not have settled the case without a release of the claim for damage to the Fabrys' business reputation.

Fabry v. Commissioner, 223 F.3d 1261, 1268-1269 n.21 (11th Cir. 2000), revg. 111 T.C. 305 (1998).

Commissioner v. Schleier, 515 U.S. 323 (1995), and cases decided after Schleier, including O'Gilvie v. United States, 519 U.S. 79 (1996), and Greer v. United States, 207 F.3d 322 (6th Cir. 2000). See Fabry v. Commissioner, supra at 1269-1270. The Court of Appeals then examined what it considered to be the "unique facts" presented in Fabry. See id. at 1270-1271. On the basis of that examination, the Court of Appeals held that, in light of those unique facts, the Fabrys had established that the $500,000 which the Commissioner conceded was paid by du Pont as damages for injury to their business reputation was received on account of personal injuries, as required by Commissioner v. Schleier, supra at 337, and consequently is excludable from gross income under section 104(a)(2). See Fabry v. Commissioner, supra at 1271.

Henry v. Commissioner

While summarizing the procedural background of the case before it on appeal in Fabry v. Commissioner, supra, the Court of Appeals cited in a footnote our opinion in Henry v. Commissioner, T.C. Memo. 1999-205, and described our findings in that opinion as follows:

> 6. See also Henry v. Commissioner, 77 T.C.M. (CCH) 2209, 1999 WL 405225 (1999)(where, relying upon its opinion in this case, Fabry v. Commissioner, 111 T.C. 305, 1998 WL 872851 (1998), the tax court found that the $1,623,203 payment received in 1994 by the tax-payer, a Florida orchid grower, for loss of business reputation and loss of business reputation as an orchid grower, in settlement of his claim for negligence and strict liability in tort against du Pont, after appli-cation of its chemical fungicide on his orchids, was

not made "on account of personal injuries" within the meaning of IRC § 104 * * * [a](2) and was includable in gross income for income tax purposes).

Fabry v. Commissioner, supra at 1263 n.6.

With all due respect, we did not find in Henry I that the $1,623,203 payment that petitioner received from du Pont in 1994 was for loss of business reputation and loss of business reputation as an orchid grower. On the record presented to us, we found in Henry I that "petitioner has failed to establish that all or any portion of the $2,800,000 total settlement amount, or the $1,623,203 settlement payment, was paid by reason of, or because of, the loss of the plaintiffs' business reputation or the loss of their reputation as orchid growers." Henry v. Commissioner, 77 T.C.M. (CCH) 2209, 2222, 1999 T.C.M. (RIA) 1238, 1255. In making the foregoing finding, we carefully reviewed the record in the instant case, which included portions of the record in the lawsuit (lawsuit) that petitioner and his former spouse Donna Henry, d.b.a. Fred Henry's Paradise of Orchids (collectively the plaintiffs), had filed against du Pont and others. In the lawsuit, the plaintiffs alleged, inter alia, negligence by du Pont and strict liability in tort of du Pont. See Henry v. Commissioner, 77 T.C.M. (CCH) at 2213-2214, 1999 T.C.M. (RIA) at 1244-1245. The plaintiffs alleged in the lawsuit that the damages to them were a direct and proximate result of the negligence of du Pont and the defective condition of Benlate. The

plaintiffs claimed as damages in the lawsuit (i.e., as losses) that they suffered and continue to suffer

> lost profits, loss of business, loss of business repu-
> tation, loss of the reputation of FRED HENRY and DONNA
> HENRY as orchid growers, diminution of sales, incurred
> additional business expenses, have had a reduction in
> the value of the business, have lost plants, have
> suffered a diminution in the value of their nursery as
> a result of chemical contamination of the soil, and
> have suffered other consequential losses and damages.

Henry v. Commissioner, 77 T.C.M. (CCH) at 2214, 1999 T.C.M. (RIA) at 1244-1245.

Although the plaintiffs claimed damages in the lawsuit for injury to their business reputation and injury to their reputation as orchid growers, at the conclusion of the trial in that lawsuit, which lasted about a month, the plaintiffs' attorney informed the jury in closing arguments that the plaintiffs were not asking for damages for loss of reputation. He stated in pertinent part:

> Now, this is probably the simplest economic chart
> ever presented in a case, but basically what it boils
> down to is this. Remember we had Dr. Reavy come up and
> explain to you that he looked at the inventory, and
> what he did, he only did one thing with the inventory,
> and that is, he reduced it from retail to wholesale.
> In other words, when they had done the inventory, they
> did it on a retail basis, and Dr. Reavy said, no, wait
> a minute; if he's going to be a wholesale grower, we'll
> put a wholesale value on it. Dr. Reavy actually re-
> duced the inventory to this 3,254,000 to reflect the
> wholesale value of the plants. Then, if you may remem-
> ber, what we did then was I said, now, Dr. Reavy, if
> you figure in just eight percent a year on that money
> for the last two years, what are the losses to Fred and
> Donna because of the loss of their inventory. When you
> figure in the eight percent for two years, it comes out

to $3,796,000.

> Now, I submit to you that that's a very conserva-
> tive figure when you think about it.  <u>All we're asking
> for here is the inventory</u>.  <u>We're not asking for</u>
> business--or the loss of the business or <u>loss of repu-
> tation</u> or any of that sort of stuff.  That's purely the
> value of the inventory.  [Emphasis added.]

<u>Henry v. Commissioner</u>, 77 T.C.M. (CCH) at 2215, 1999 T.C.M. (RIA)

at 1246-1247.[4]

After the trial in the lawsuit, the jury rendered a verdict

(jury verdict) finding (1) that du Pont placed Benlate on the

market with a defect which was the legal cause of damage to the

plaintiffs, (2) that there was negligence on the part of du Pont

which was a legal cause of damage to them, and (3) that there was

negligence on the part of the plaintiffs which was a legal cause

of damage to them.  The jury charged 80 percent of total respon-

sibility to du Pont and 20 percent of total responsibility to the

---

[4]In Henry I, we found the statements of plaintiffs' attorney
in closing arguments to the jury to be consistent with the
evidence submitted by the plaintiffs to that jury with respect to
the loss that they claimed they suffered as a result of their
applying Benlate to the orchid plants of Fred Henry's Paradise of
Orchids.  That evidence consisted of the testimony of the plain-
tiffs' expert, an economist, that the value of the plaintiffs'
inventory of orchid plants was $3,254,559, to which that expert
added eight percent interest in order to arrive at the total loss
that the plaintiffs claimed in that lawsuit, or $3,796,118.  Du
Pont also presented evidence in the lawsuit through an expert who
valued the plaintiffs' inventory at $75,000 and who concluded
that the total loss of the plaintiffs was between $172,995 and
$267,803.  No other witness testified in the lawsuit concerning
the damages sustained by the plaintiffs.  See <u>Henry v. Commis-
sioner</u>, 77 T.C.M. (CCH) 2209, 2222, 1999 T.C.M. (RIA) 1238, 1254-
1255.

plaintiffs.  In other words, the jury found du Pont 80 percent negligent and the plaintiffs 20 percent negligent.  The jury further found that the total amount of damages sustained by the plaintiffs, without any reduction for the percentage of responsibility that the jury charged to them, was $3,796,318.  The total amount of damages was reduced to $3,037,054 to take account of the jury verdict that the plaintiffs were 20 percent negligent. On motion of du Pont, the judgment of $3,037,054 was reduced to $2,837,054 in order to account for the total of $200,000 in assistance payments that du Pont had made to Mr. Henry in 1991 and 1992.  On December 8, 1993, the Florida court entered an amended final judgment (judgment) in the plaintiffs' favor in the amount of $2,837,054.  See Henry v. Commissioner, 77 T.C.M. (CCH) at 2216, 1999 T.C.M. (RIA) at 1247.

While the judgment was on appeal by du Pont, the plaintiffs and du Pont engaged in settlement negotiations.  As a result of those negotiations, the plaintiffs offered to settle the lawsuit for $2,800,000, and that settlement offer was accepted by du Pont on the date it was made.  That $2,800,000 settlement negotiated between the plaintiffs and du Pont, which was part of a global settlement of approximately 200 claimants against du Pont, was paid by du Pont as a result of the jury verdict.  Pursuant to the stipulation of settlement to which the plaintiffs and du Pont agreed (stipulation of settlement), (1) du Pont agreed to pay the

plaintiffs' cost of the lawsuit, (2) the plaintiffs executed a document entitled "RELEASE, INDEMNITY AND ASSIGNMENT" (release, indemnity, and assignment), and (3) a notice of voluntary dismissal of the appeal of the lawsuit was filed on or about May 13, 1994.[5]  See id.

In Henry I, we found nothing in the record before us, including the stipulation of settlement and the release, indemnity, and assignment,[6] which established that all, or even a portion, of the total settlement amount, or the total settlement payment, was paid on account of the loss of the plaintiffs' business reputation or the loss of their reputation as orchid growers.[7]  Unlike Fabry v. Commissioner, 111 T.C. 305 (1998), revd. 223 F.3d 1261 (11th Cir. 2000), the Commissioner did not concede in Henry v. Commissioner, T.C. Memo. 1999-205, vacated and remanded without published opinion 234 F.3d 34 (11th Cir.

---

[5]Of the $2,800,000 that du Pont agreed in the stipulation of settlement to pay the plaintiffs in the lawsuit, du Pont paid $450,000 to the attorneys, $31,139.14 to various third parties, a total of $695,658.26 to Donna Estes, and a total of $1,623,203 to petitioner.  See Henry v. Commissioner, 77 T.C.M. (CCH) at 2216, 1999 T.C.M. (RIA) at 1247.

[6]The document in the record entitled "RELEASE, INDEMNITY AND ASSIGNMENT" appears to be an incomplete copy of that document.

[7]Nor did we find anything in the record in Henry I which established that Mr. Henry received the $150,000 assistance payment from du Pont in 1992 by reason of, or because of, loss of business reputation or loss of reputation as an orchid grower. See Henry v. Commissioner, 77 T.C.M. (CCH) 2209, 2219-2220, 1999 T.C.M. (RIA) 1238, 1251-1252.

2000), that all, or any portion, of the total settlement amount, or the total settlement payment, was paid on account of the loss of the plaintiffs' business reputation or the loss of their reputation as orchid growers.  Furthermore, unlike the facts presented in Fabry, the record in Henry v. Commissioner, supra, did not establish (1) that throughout the trial in the lawsuit and/or throughout settlement discussions after the jury verdict in the lawsuit the plaintiffs had steadfastly presented claims for a specified dollar amount as damages for injury to their business reputation and injury to their reputation as orchid growers, (2) that du Pont never disputed the plaintiffs' claims for damages for injury to their business reputation and injury to their reputation as orchid growers throughout the lawsuit and/or those settlement discussions, (3) that du Pont sought and obtained a release specifically with respect to the plaintiffs' reputation claims, and (4) that du Pont would not have settled the lawsuit without a release of the plaintiffs' claims for damages for injury to their business reputation and injury to their reputation as orchid growers.  But see Fabry v. Commissioner, 223 F.3d 1261, 1268-1269 n.21 (11th Cir. 2000); cf. supra note 3.

Although we found on the record presented to us in Henry I that petitioner had failed to establish that all, or any portion, of the $2,800,000 total settlement amount, or the $1,623,203

settlement payment, was paid by du Pont by reason of, or because of, the loss of the plaintiffs' business reputation or the loss of their reputation as orchid growers, we nonetheless addressed petitioner's contention that "Damage to reputation is clearly personal injury for the purpose of IRC § 104(a)(2)".  We considered that contention solely "for the sake of completeness".  Henry v. Commissioner, 77 T.C.M. (CCH) at 2222, 1999 T.C.M. (RIA) at 1255.  We did not address that contention of petitioner because we needed to do so in order to resolve the issue presented under section 104(a)(2) regarding the $1,623,203 settlement payment, and we expressly so stated in our opinion.  See id.  As we understood petitioner's position in Henry I, petitioner was contending that damage to reputation is, as a matter of law, personal injury within the meaning of section 104(a)(2).  We noted that we had rejected such an argument in Fabry v. Commissioner, 111 T.C. 305 (1998), and we rejected any such argument in Henry I.  See id.

We then described our approach and analysis in Fabry I and applied the same approach and analysis in Henry I.  We stated in Henry I:

> assuming arguendo that the $1,623,203 settlement payment which petitioner received from du Pont during 1994 had been paid for loss of his business reputation and loss of his reputation as an orchid grower, that payment was not made on account of personal injuries within the meaning of section 104(a)(2).  [Emphasis added.]

Henry v. Commissioner, 77 T.C.M. (CCH) at 2224, 1999 T.C.M. (RIA) at 1258.

However, as discussed above, we did not find on the record presented to us in Henry I that the $1,623,203 settlement payment was paid for loss of petitioner's business reputation or loss of his reputation as an orchid grower.  Instead, we found on that record that

> petitioner has failed to establish that all or any portion of the $2,800,000 total settlement amount, or the $1,623,203 settlement payment, was paid by reason of, or because of, the loss of the plaintiffs' business reputation or the loss of their reputation as orchid growers.

Henry v. Commissioner, 77 T.C.M. (CCH) at 2222, 1999 T.C.M. (RIA) at 1255.  In light of the above-quoted finding that we made in Henry I, we do not believe that the Court of Appeals' opinion in Fabry II requires us to change our finding in Henry I that, on the record before us in this case, petitioner failed to establish that the $1,623,203 settlement payment that he received during 1994 was made on account of personal injuries within the meaning of section 104(a)(2), as construed by the Supreme Court in Commissioner v. Schleier, 515 U.S. 323 (1995), and cases decided after Schleier.[8]

_____

[8]In Fabry II, the Court of Appeals stated in a footnote:

23.  While we agree that the terms of the settlement agreement (and supporting documentation) is a factor to be considered, see Stocks v. Commissioner, 98 T.C. 1,
(continued...)

We have carefully considered each of the remaining issues that we decided in Henry I.  We conclude that nothing in Fabry II requires us to change our findings as to any of those other issues.

On careful reconsideration pursuant to the mandate of the Court of Appeals,

<u>Decision will be entered</u>

<u>for the same years in the same</u>

<u>amounts as previously entered</u>

<u>in this case</u>.

---

[8](...continued)
10 * * * (1992), it is only one factor.  Intent of the payor is also a factor to be considered.  <u>See</u> <u>Metzger v. Commissioner</u>, 88 T.C. 834, 347-48 * * * (1987), aff'd. <u>without published opinion</u>, 845 F.2d 1013 (3d Cir. 1988); <u>Knuckles v. Commissioner</u>, 349 F.2d 610 (10th Cir. 1965).  * * *

<u>Fabry v. Commissioner</u>, 223 F.3d 1261, 1269 n.23 (11th Cir. 2000).

With respect to the intent of the payor in Henry I, it is noteworthy that du Pont, the payor, issued two Forms 1099-MISC relating to the $2,800,000 that it paid pursuant to the stipulation of settlement, which reflected its view that that payment is nonemployee compensation.  See <u>Henry v. Commissioner</u>, 77 T.C.M. (CCH) at 2216, 1999 T.C.M. (RIA) at 1248.