T.C. Memo. 2002-115


UNITED STATES TAX COURT


DONNA J. COLLINS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

SHAHRAM MANIGHALAM, Petitioner v. COMMISSIONER OF INTERNAL
REVENUE, Respondent


Docket No. 8078-00, 8210-00.           Filed May 9, 2002.


Gary R. King, for petitioner in docket No. 8078-00.

Shahram Manighalam, pro se.

Kevin W. Coy and Kelley Blaine, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, Judge:  Respondent determined a deficiency in
petitioners' 1994 Federal income tax of $12,665 and an addition
to tax under section 6651(a)(1) of $1,611.50.

The Xircom company extended a job offer to Shahram Manighalam (petitioner). Petitioner then resigned from a position with his prior employer, American Telephone & Telegraph (AT&T). However, Xircom rescinded its job offer before petitioner began his employment at Xircom, and AT&T refused petitioner's request to rescind his resignation. As compensation, Xircom paid $59,163 to petitioner in 1994. The issues for decision are:[1]

1. Whether petitioners may exclude the Xircom payments for 1994 from gross income under section 104(a)(2) as damages for a personal injury. We hold that they may not.

2. Whether petitioners are liable for the addition to tax for failure to timely file under section 6651(a)(1) for 1994. We hold that they are.

3. Whether the statute of limitations bars assessment of tax for 1994. We hold that it does not.

Section references are to the Internal Revenue Code as amended and in effect for the year in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

---

[1] Before trial, Donna J. Collins conceded all separate issues raised in her petition and agreed to be bound by the Court's decision on all other issues in Shahram Manighalam's case.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A.  Petitioners

Petitioners resided in Fullerton, California, when they filed their petitions.  Their cases were later consolidated for trial, briefing, and opinion.

Petitioner has a bachelor's and a master's degree in electrical engineering.  Petitioners were married in 1991.  Donna J. Collins (Collins) did not work outside the home while she was raising petitioners' two young sons in 1994.

Petitioner worked as an engineer for AT&T in Huntington Beach, California, in 1994.  Early in 1994, a recruiting firm contacted petitioner about working for Xircom, Inc. (Xircom), in Thousand Oaks, California.

James Richard Soriano III (Soriano) and several Xircom engineers interviewed petitioner.  On March 24, 1994, Xircom offered petitioner a job at a monthly salary of $6,666.67, beginning April 18, 1994.  Xircom agreed to pay petitioners' relocation expenses from Fullerton, where they lived at the time, to Thousand Oaks.  Petitioner accepted the Xircom offer. Petitioner resigned from AT&T on March 31, 1994.

Xircom withdrew its offer to petitioner on April 11, 1994. Petitioner unsuccessfully tried to withdraw his resignation from AT&T.  He advised Xircom of this fact on April 14, 1994.

B.   Petitioner's Negotiations With Xircom

Before 1994, Xircom had occasionally offered jobs to prospective employees (other than petitioner) and withdrawn those offers before the employee began to work for Xircom.  In 1994, Xircom's practice was to offer to prospective employees from whom it had withdrawn employment offers replacement salary, replacement medical insurance payments, and out-placement services.[2]

On April 14, 1994, Xircom offered petitioner medical insurance, out-placement services, and payments equal to 3 months of his AT&T salary.  Xircom intended the payments to replace the compensation that petitioner would have earned in 3 months at AT&T if Xircom had not made a job offer to him.

Petitioner made a counteroffer in which he asked for 9 months of the salary Xircom had promised him ($6,666.67 per month) and a positive employment reference.  On April 19, 1994, Xircom agreed.  Petitioner and Xircom signed a consulting agreement effective as of April 18, 1994, which said that petitioner was an independent contractor of Xircom.  Xircom agreed to pay petitioner $6,666.67 per month until January 31, 1995, and it gave petitioner a positive employment reference.

_____

[2]  Out-placement services include assistance in career planning and development of skills in areas such as resume preparation and interviewing.

Petitioner performed no services for Xircom in 1994.  Xircom paid petitioner $59,163 in 1994 and $6,666.66 in 1995 under the consulting agreement.  Xircom issued to petitioner Forms 1099-MISC, Miscellaneous Income, showing that it had paid him nonemployee compensation in those amounts.

The consulting agreement was scheduled to expire on January 31, 1995.  On January 16, 1995, petitioner wrote to Xircom and asked Xircom to extend the period for which he was to be compensated for another 9 months.  Xircom refused.

Petitioner then offered to release Xircom from liability for "any damages inflicted on me as a result of Xircom's withdrawal of job offer."  On January 24, 1995, Xircom offered to extend the original agreement for 2 months (until March 31, 1995) if petitioner agreed to sign a settlement agreement and mutual release of all claims.  Petitioner refused.  On January 25, 1995, petitioner threatened to sue Xircom if it did not agree to pay him a lump-sum payment of $51,115.12 (7 months of compensation ($6,666.66) plus 7 months of COBRA coverage ($635.50)).  Petitioner asked Xircom to characterize all of its payments to him as a "personal injury settlement (for tax purposes)".  Xircom refused to do so.

C.  Petitioner's Lawsuit

On March 15, 1995, petitioner sued Xircom in the Superior Court of Orange County, California.  Petitioner sought $4 million

in damages for loss of earnings. He alleged three causes of action: Breach of contract, intentional tort for fraudulent inducement to enter into a contract, and general negligence. The court granted Xircom's motion for judgment on the pleadings as to the intentional tort and negligence claims. The court found no breach of contract because the contract could be unilaterally terminated. Petitioner amended his complaint to add a cause of action for equitable estoppel. The court denied relief to petitioner, finding that he had not shown that he suffered damages directly related to his reliance on Xircom's job offer.

D. Petitioners' Family

Petitioners had no source of income other than petitioner's employment. They were devastated by Xircom's withdrawal of its job offer to petitioner and AT&T's refusal to allow him to rescind his resignation.

During that time, petitioners did not sleep well and they became short tempered with each other and their children. Petitioners separated in October or November 1995 and later divorced.

E. Petitioners' 1994 Return, Extension of Time To Assess, and Notice of Deficiency

Petitioners filed a joint return for 1994 on September 3, 1996. On June 2, 1999, petitioner signed a Form 872, Consent to Extend the Time to Assess Tax, extending the period to assess tax

for 1994 until October 31, 2000.  Respondent issued the notice of deficiency to petitioners on April 24, 2000.

OPINION

A.   Whether Petitioners May Exclude From Gross Income Under Section 104(a)(2) $59,163 That Petitioner Received in 1994

Petitioners contend that the $59,163 that petitioner received from Xircom in 1994 is excludable from gross income as damages for a personal injury under section 104(a)(2).[3] Petitioners contend that Xircom and AT&T colluded to prevent petitioner from being employed by either of them.  Petitioners contend that, because of petitioner's job situation, they became physically ill, lost sleep, suffered emotional distress, and were divorced, and that the payments were on account of those personal injuries.[4]

---

[3]  Sec. 104(a)(2) provides:

SEC. 104(a). In General.--Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include--

* * * * * * *

(2) the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness;

[4]  For the year in issue, personal injuries included both physical and nonphysical injuries.  Commissioner v. Schleier, 515 U.S. 323, 329 n.4 (1995).

Respondent contends that petitioners may not exclude the Xircom payments from income under section 104(a)(2) because Xircom paid those amounts to replace wages petitioner would have earned if Xircom had not withdrawn its job offer. We agree with respondent for reasons discussed next.[5]

Gross income does not include the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness. Sec. 104(a)(2). We decide the tax treatment of the Xircom payments by considering in lieu of what these amounts were paid. Bagley v. Commissioner, 105 T.C. 396, 406 (1995), affd. 121 F.3d 393 (8th Cir. 1997).

The April 18, 1994, agreement between petitioner and Xircom does not state that the payments were on account of personal injury or sickness. Where a settlement agreement is silent as to whether a payment was made on account of a personal injury, the most important factor in determining the application of section 104(a)(2) is the intent of the payor. Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo. 1964-33; Agar v. Commissioner, 290 F.2d 283, 284 (2d Cir. 1961), affg. per

---

[5] Sec. 7491 applies to court proceedings arising in connection with examinations commencing after July 22, 1998. Petitioners do not contend that respondent bears the burden of proving that sec. 104(a)(2) does not apply, and they introduced no evidence establishing that the examination in this case commenced after July 22, 1998. Accordingly, petitioners bear the burden of proving that sec. 104(a)(2) applies. Rule 142(a)(1).

curiam T.C. Memo. 1960-21; Metzger v. Commissioner, 88 T.C. 834, 847-848 (1987), affd. without published opinion 845 F.2d 1013 (3d Cir. 1988).

To discern the intent of the payor, we consider the method used by the payor to determine the amount paid, compare the agreement to other agreements made by the company, consider the facts that led to the agreement, and weigh other facts that may reveal the payor's intent. Greer v. United States, 207 F.3d 322, 329 (6th Cir. 2000); Pipitone v. United States, 180 F.3d 859, 864-865 (7th Cir. 1999). Dennis Hamby (Hamby), Xircom's director of human resources in 1994 and 1995, and Randall Holliday (Holliday), Xircom's corporate counsel in 1994 and 1995, testified that Xircom did not pay petitioner the $59,163 on account of a personal injury. The parties did not negotiate the payments at issue on account of personal injuries or sickness that petitioner may have suffered.

Xircom paid $59,163 to petitioner in 1994 pursuant to the April 18, 1994, agreement between petitioner and Xircom. The amounts chosen were the amounts of salary petitioner would have earned at AT&T or Xircom. Xircom's practice of offering payments resembling severance pay to individuals from whom it had withdrawn an employment offer suggests that Xircom made payments to petitioner to replace wages. The fact that Xircom made monthly payments and that Xircom issued petitioner a Form 1099-

MISC for 1994 showing that it had paid him nonemployee compensation of $59,163 suggests that Xircom thought those amounts were a substitute for wages. Lost wages are not excluded from income under section 104(a)(2) when received as damages "pursuant to the settlement of economic rights arising out of a contract". Robinson v. Commissioner, 102 T.C. 116, 126 (1994), revd. on an issue not relevant herein 70 F.3d 34 (5th Cir. 1995). In contrast, lost wages recovered on behalf of an individual who is unable to work because of a personal injury, such as an automobile accident, may be excludable. See Commissioner v. Schleier, 515 U.S. 323, 329-330 (1995).

Petitioner points out that Hamby testified in an earlier deposition that Xircom made the payments to prevent further harm to petitioner. Petitioner contends that Hamby's use of the term "harm" shows that the payments were for personal injury or sickness. We disagree. We believe the "harm" Hamby referred to was the loss of wages.

Hamby and Holliday testified that Xircom paid petitioner solely to replace wages that he would have earned. Xircom had no financial interest in the characterization of its payments to petitioner because it could deduct them whether or not petitioner could exclude them from income. We find the testimony of Hamby and Holliday to be credible.

Petitioners testified that they became physically ill, lost sleep, contracted pneumonia, had headaches, suffered emotional distress, and divorced as a result of Xircom's withdrawal of the employment offer to petitioner. However, this does not establish that Xircom had knowledge of, or intended to pay petitioner damages on account of, personal injuries or sickness.

Xircom did not pay petitioner for damage to his reputation. Thus, this case is unlike Fabry v. Commissioner, 223 F.3d 1261, 1270-1271 (11th Cir. 2000), revg. 111 T.C. 305 (1998), where the U.S. Court of Appeals for the Eleventh Circuit held that, because the taxpayers' business reputation was uniquely linked to their personal reputation, damages paid for injury to the taxpayers' business reputation were received on account of personal injury and thus excludable under section 104(a)(2).

We conclude that petitioners may not exclude from income Xircom's payments of $59,163 to petitioner in 1994 because they were a substitute for wages, and they were not paid on account of personal injuries or sickness. See United States v. Burke, 504 U.S. 229, 234 (1992); Robinson v. Commissioner, supra.

B.   Whether Petitioners Are Liable for the Addition to Tax for Failure To Timely File Their 1994 Income Tax Return

Respondent determined and contends that petitioners are liable for the addition to tax under section 6651(a) for failure to timely file their income tax return for 1994. A taxpayer is liable for an addition to tax of up to 25 percent for failure to

timely file a Federal income tax return unless the failure was due to reasonable cause and not willful neglect.  Sec. 6651(a)(1).

As stated above, the record is not clear whether section 7491 applies here.  In court proceedings arising in connection with examinations beginning after July 22, 1998, section 7491(c) places on the Commissioner the burden of producing sufficient evidence that it is appropriate to impose the addition to tax under section 6651(a)(1).  If section 7491(c) applies, respondent has met the burden of production relating to petitioners' liability for the addition to tax for failure to timely file their 1994 return because respondent has shown that petitioners filed their 1994 return on September 3, 1996.  Thus, petitioners bear the burden of proving that the failure is due to reasonable cause and not willful neglect.  See United States v. Boyle, 469 U.S. 241, 245 (1985).

Petitioners did not address this issue at trial or on brief, and we deem petitioners to have conceded that they are liable for the addition to tax for failure to timely file their 1994 income tax return.  We may deem a taxpayer to have conceded an issue that was raised in the petition if he or she made no argument at trial or on brief relating to that issue.  See Levin v. Commissioner, 87 T.C. 698, 722-723 (1986), affd. 832 F.2d 403 (7th Cir. 1987); Zimmerman v. Commissioner, 67 T.C. 94, 104 n.7

(1976).  We conclude that petitioners are liable for the addition
to tax under section 6651(a) for failure to timely file their
1994 income tax return.

C.    Whether the Time To Assess Tax Against Petitioners for 1994
      Has Expired

Petitioner contends that the time to assess tax against
petitioners for 1994 expired before respondent issued the notice
of deficiency.  We disagree.  Collins concedes that the time to
assess tax for petitioners' 1994 tax year has not expired.  On
June 2, 1999, petitioner signed a Form 872, in which he agreed to
extend the time to assess tax for 1994 until October 31, 2000.
Respondent issued the notice of deficiency on April 24, 2000.
Petitioner does not contend that the Form 872 that he signed is
invalid.  We conclude that the time to assess the tax for
petitioners' 1994 tax year had not expired when respondent issued
the notice of deficiency.

To reflect the foregoing,

Decisions will be
entered for respondent.